## CALLAHAN *v.* CITY OF BERKLEY.

1. MUNICIPAL CORPORATIONS — VILLAGES — LOCAL IMPROVEMENTS — SPECIAL ASSESSMENTS—GENERAL OBLIGATIONS—ELECTIONS—DEFICIENCY.

   Under the village home rule act where local district improvements are duly authorized, benefits assessed and action confirmed, bonds, in anticipation of collection of such assessments, could be issued by the village and the faith and credit thereof pledged for their payment without an election, such pledge resting upon assessments collected and not becoming a general obligation of the village except for deficiency arising out of inability to make collection of the full special assessments (1 Comp. Laws 1929, § 1786, 1788).

2. SAME—VILLAGES—SPECIAL ASSESSMENT DISTRICT BONDS.

   A village may not employ the power to issue special assessment district bonds for raising general village funds (1 Comp. Laws 1929, §§ 1786, 1788).

3. SAME—VILLAGE DEBT LIMITATION.

   The amount of special district assessment bonds may not be computed in the debt limitation of a village (1 Comp. Laws 1929, §§ 1786, 1788).

4. SAME—GENERAL OBLIGATIONS—DEBT LIMITATION—DIVERSION OF RECEIPTS FROM SPECIAL ASSESSMENT BONDS.

Moneys received by a village from the sale of special assessment bonds which have been diverted to general village expenses or purposes should be included in computing the village debt limitation, but such diversion, if any, may not be employed to defeat the rights of holders of bonds regularly issued (1 Comp. Laws 1929, §§ 1786, 1788).

5. SAME—STATUTES—AMENDMENT—CHARTER.

It is not necessary that an amendment to a general statute pertaining to the incorporation of villages be included within the village charter by way of amendment since the statute and its amendments are general law and are to be read into the charter.

6. SAME—TAX ANTICIPATION NOTES—GENERAL OBLIGATIONS—DEBT LIMITATION.

Tax anticipation notes, dated in 1929 and issued and sold in anticipation of delinquent and current village taxes for years 1926–1930, are general obligations of the village although not subject to the statutory debt limitation and were validated by subsequently enacted statute (1 Comp. Laws 1929, §§ 1786, 1788; Act No. 26, Pub. Acts 1931).

7. SAME—GENERAL AND SPECIAL IMPROVEMENTS—ASSESSMENTS.

Upon incorporation as a village the common needs of the inhabitants demand general and special improvements for which the village has power to levy ad valorem taxes and special assessments to pay for designated district and assessed public portion of benefits.

8. SAME—HOME RULE ACT FOR VILLAGES—CHARTERS.

The home rule act for villages is one of general grant of rights and powers subject to stated restrictions and thereunder the charter may carry any provisions deemed proper for the municipal government not contrary to the Constitution or any general statute (1 Comp. Laws 1929, § 1763 et seq.).

9. SAME—ELECTIONS—SPECIAL ASSESSMENT BONDS.

No election is required for special assessment bonds for general village improvements of public moment and need.

10. SAME — ELECTIONS — LOCAL IMPROVEMENT BONDS — REFUNDING BONDS.

No election is necessary for an issue of bonds for the village portion of local improvements, if within the designated debt limitation percentage, or in the refunding of such bonds (1 Comp. Laws 1929, §§ 1786, 1788).

11. SAME—VILLAGE HOME RULE ACT—CHARTERS—STATUTES.

Under the village home rule act the charter as adopted by the electors must conform to the provisions of the Constitution and applicable statutes but as adopted it is supplemented by specific statutes to supply the needs of municipal operation (1 Comp. Laws 1929, § 1763 *et seq.*).

12. SAME—GENERAL OBLIGATION BONDS—SPECIAL ASSESSMENTS— DEBT LIMITATIONS.

General obligation bonds of a village not voted by the electors and issued by the village to pay its portion of special assessment improvements are within and subject to the debt limitation provision in village home rule act and charter (1 Comp. Laws 1929, §§ 1786, 1788; Berkley Village Charter, chap. 19, § 30).

13. TAXATION—TAX ANTICIPATION NOTES—DELINQUENT SPECIAL ASSESSMENTS.

Tax anticipation notes may be lawfully issued in anticipation of delinquent special assessments as well as general taxes (Act No. 26, Pub. Acts 1931).

14. MUNICIPAL CORPORATIONS—BOND ISSUE EXCEEDING DEBT LIMITATION.

Obligations issued in excess of the debt limitation of a municipality are void (1 Comp. Laws 1929, §§ 1786, 1788).

15. SAME—BOND ISSUE EXCEEDING DEBT LIMITATION—VOID PORTION.

Each bond of an issue in excess of debt limitation of issuing village is void in proportion to the amount the issue is in excess of the limitation (1 Comp. Laws 1929, §§ 1786, 1788).

16. SAME—REFUNDING BONDS—GENERAL OBLIGATION.

Refunding bonds issued by a village with certain exceptions are rendered general obligation bonds by the public debt commission act even though not so originally (Act No. 13, Pub. Acts 1932 [Ex. Sess.], as amended by Act No. 271, Pub. Acts 1937).

17. SAME—SPECIAL ASSESSMENTS—TRUSTS—BONDS—GENERAL OBLIGATIONS—DEBT LIMITATION.

Special assessments collected in each district are a trust fund for the payment of special assessment bonds of the district and constitute the primary source of payment of special assessment bonds which are a valid general obligation of the village, and the sole source of payment of special assessment bonds except to the extent a deficiency arises out of inability to collect special assessments in full (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1786, 1788; Berkley Village Charter, chap. 19, § 30).

18. SAME—BONDS EXCEEDING DEBT LIMITATION—EQUITY—ACCOUNTING.

   A contract of indebtedness in excess of the debt limit is invalid insofar as it exceeds the debt limit, but a court of equity may enforce the liability to the extent that the municipality may legally borrow where there is no difficulty in applying the proceeds of the bonds in an accounting (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1786, 1788).

19. SAME—DEBT LIMITATION—VALIDATION OF EXCESS—STATUTES.
   Debts in excess of the debt limit, where the limit is fixed by statute and not by the Constitution, may be ratified by a subsequent statute (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1786, 1788).

### ON APPLICATION FOR REHEARING.

20. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RECITALS IN MUNICIPAL BONDS.
   In suit to determine rights of holders of bonds issued by village, provision of trial court's decree that "bonds in excess of the debt limitations are not validated in the hands of bona fide holders by recitals in the bonds" is eliminated from portion of decree affirmed where not essential to decision, the bonds involved herein not being in excess of the debt limitation (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1786, 1788).

21. MUNICIPAL CORPORATIONS—DEBT LIMITATIONS OF HOME RULE CITIES AND VILLAGES.
   A determination as to whether obligations issued by a village under the village home rule statute is not a matter of local but of State-wide concern since it pertains to debt limitations of home rule cities and villages (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1786, 1788).

Appeal from Oakland; Holland (H. Russel), J. Submitted October 12, 1943. (Docket No. 9, Calendar No. 42,460.) Decided December 29, 1943. Rehearing denied April 7, 1944.

Bill by Martin C. Callahan and others as Bondholders' Protective Committee against City of Berkley and its treasurer for an accounting and to determine rights of bondholders. From decree entered, defendants appeal and plaintiffs cross-appeal. Affirmed and remanded for further proceedings.

*Joslyn, Joslyn & Joslyn (Miller, Canfield, Paddock & Stone,* of counsel), for plaintiff.

*Arthur E. Moore,* for defendants.

*Claude H. Stevens, amicus curiae.*

WIEST, J. This suit in equity is by holders of bonds and obligations of the village of Berkley, now city of Berkley, to have decree determining their rights and that of other bondholders like situated. The circuit judge classified the bonds and obligations and limited some to special sources of income and held others general obligations of the city to the extent of charter and statutory authorization. Defendants review by appeal and plaintiffs by cross appeal.

The obligations were issued by the village of Berkley between 1925 and 1929, while operating under the home rule statute and charter adopted by the electors. 1 Comp. Laws 1929, § 1786 (Stat. Ann. § 5.1534). The obligations of the village as stated by the trial judge consisted of general obligation bonds, $112,000; special assessment general obligation bonds $993,000; tax anticipation notes $606,919.76. In an opinion the circuit judge stated:

"That the bonds * * * were issued to the plaintiffs herein by the village of Berkley is not disputed; nor is it open to dispute that the bonds here involved were issued to pay for the improvements set forth, or that the money borrowed on the tax anticipation notes was to pay the lawful expenses of the municipality involved. It is not claimed that any of the money borrowed was used for any purpose not duly authorized.

"The plaintiffs' combined holdings * * * constitute more than 41 per cent. of the general obligation bonds; 57 per cent. of said special assessment general obligation bonds and 90 per cent. of said tax anticipation notes."

The mentioned village home rule statute authorized the following village charter provisions:

"For exercising all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be herein expressly enumerated or not; for any act to advance the interest of the village, the good government and prosperity of the municipality and its inhabitants; and for making all laws which shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by the Constitution in villages, except where forbidden, or where the subject is covered exclusively by a general law."

The village charter provided that the village could pledge its full faith and credit on all special assessment bonds. We quote:

"The commission shall have authority to raise money by loan, in anticipation of the receipts from special assessments, for the purpose of defraying the costs of the improvement for which the assessment was levied. Bonds or notes may be issued for such loans which shall not exceed the amount of the assessment for the completion of the whole work, nor shall such loan be made until after the special assessment roll shall have been confirmed. The commission shall pledge the faith and credit of the village for the payment of such bonds." Charter, chap. 19, § 24.

The charter included assessment bonds within the 10 per cent. debt limitation by the following wording which, it is claimed by defendants, makes no exception as to such special assessment bonds:

"No indebtedness shall be incurred by the issue of bonds or otherwise in any sum which, including existing indebtedness, shall, exceed ten per centum of the assessed valuation of the real and personal property within the village subject to taxation as shown by the last preceding assessment roll of the village. Moneys on hand in a sinking fund limited to the payment of indebtedness may be treated as a reduction of such indebtedness to that extent." Charter, chap. 19, § 30.

The special assessment bonds all contained language similar to the following:

"And for the prompt payment of this bond, both principal and interest, the collections from street improvement special assessment district   *   *   *   together with the full faith and credit of the village of Berkley, is hereby irrevocably pledged.

"This bond is   *   *   *   issued for the purpose of raising funds to pay for (here follows description of local improvement project). This bond is payable out of *   *   *   special assessment district No.   *   *   *   fund."

The village of Berkley was incorporated October 23, 1923, and became the city of Berkley on May 23, 1932.

The court held the special assessment bonds here involved were general obligations of the village because so pledged on their face under the charter power and did not require a vote of the electors; but required such bonds to be included in determining whether or not the 10 per cent. debt limitation was exceeded in violation of the village home rule act, as amended by Act No. 349, Pub. Acts 1921. This section was amended by Act No. 303, Pub. Acts 1925 (See 1 Comp. Laws 1929, § 1788 [Stat. Ann. § 5.1536]), by adding the following words: "Bonds issued in anticipation of the collection of special assessments shall not be included in this (debt) limitation." In case local district improvements have been duly authorized and benefits assessed and the action confirmed, bonds, in anticipation of collection, may be issued by the village and the faith and credit of the village pledged for payment thereof, but such pledge of payment rests upon assessments collected and may not become a general obligation of the village except to the extent a deficiency arises out of inability to make collection of the full special assessments. In other words, the village may not employ the power to issue special assessment district bonds for raising general village funds. Special district assessment bonds, within the rule we have just

mentioned, required no vote of the electors, and the court was in error in holding the amount thereof to be computed in the debt limitation.

The mentioned amendment to the statute in 1925 excluded special assessment bonds from inclusion in the debt limitation. We understand the special assessment bonds were issued after the mentioned amendment. If moneys received from sale of special assessment bonds have been diverted to general village expenses or purposes, then the diverted amount should be included in computing the debt limitation, but such diversion, if any, may not be employed to defeat the right of holders of bonds regularly issued.

Defendants claim the charter was not amended and, therefore, whether the special assessment bonds should be included in the debt limitation or not is governed by the charter provision. The statutory provision of 1925 did not require any incorporation in the charter for it was a general law and is to be read into the charter. The tax anticipation notes issued and sold in anticipation of delinquent taxes for the years 1926, 1927, 1928, and 1929, and dated April, 1929, in anticipation of taxes for the year 1930, were general obligations of the village in accord with the charter provision, which provides: "The commission may issue tax anticipation notes therefor, and pledge the full faith and credit of the village for the payment of such loans." Notes, issued in anticipation of general taxes, were pledged because, under the charter, delinquent taxes as well as current taxes were to be converted into cash to pay current expenses and obligations, and such anticipation notes were a type of indebtedness not subject to the debt limitation.

The court also held that the obligations here involved which partially exceeded the debt limitation were proportionately void, and Act No. 26, Pub. Acts

1931 (Comp. Laws Supp. 1940, § 2702–1 *et seq.*, Stat. Ann. § 7.821 *et seq.*), validated the tax anticipation notes, and Act No. 13, Pub. Acts 1932 (1st Ex. Sess.), as amended by Act No. 271, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 2705–1 *et seq.*, Stat. Ann. 1939 Cum. Supp. § 5.3201 *et seq.*]), rendered refunding bonds general obligations.

Counsel for the city contends that the charter provision pledging the faith and credit of the village for the payment of special assessment bonds was without authorization of law.

When a hamlet is incorporated as a village the common needs of the inhabitants demand much welfare and growth regulation, inclusive of general and special improvements, and to meet the same with power to levy ad valorem taxes and special assessments to pay for designated district and assessed public portion of benefits.

It is to be noted that the home rule act * for villages is one of general grant of rights and powers, subject, however, to stated restrictions and thereunder the charter may carry any provisions deemed proper for the municipal government not contrary to the Constitution or any general statute. See *City of Pontiac* v. *Ducharme,* 278 Mich. 474; *Toebe* v. *City of Munising,* 282 Mich. 1. No election is required for special assessment bonds for general village improvements of public moment and need. Nor is an election necessary for an issue of bonds for the village portion of local improvements, if within the designated percentage, or in the refunding of such bonds. Under the village home rule act the charter as adopted by the electors must conform to the provisions of the Constitution and applicable statutory laws of the State, but under modern legislation the charter adopted is supplemented by specific stat-

---

* See 1 Comp. Laws 1929, § 1763 *et seq.* (Stat. Ann. § 5.1511 *et seq.*).—REPORTER.

utory provisions to supply the needs for municipal operation.

The decree entered in the circuit court determined:

"The village had power under the law and under its charter to issue special assessment bonds pledging the full faith and credit of the village for their payment, and all the aforesaid special assessment bonds, if otherwise valid, are general obligations of the village.

"The village had power, under the law and under its charter to issue special assessment bonds, as general obligations, without a vote of the electors.

"Such special assessment bonds, issued as general obligations of the village, are indebtedness of the village subject to the statutory and charter limitation of 10 per cent. of the assessed valuation.

"General obligation bonds not voted by the electors, issued by the village to pay its portion of special assessment improvements are within and subject to the 10 per cent. of assessed valuation, statutory and charter limitation.

"Tax anticipation notes are a general obligation of the village.

"Tax anticipation notes were lawfully issued, in anticipation of delinquent special assessments as well as general taxes.

"Although the general obligation of the village, yet tax anticipation notes are not indebtedness subject to the statutory and charter limitation of 10 per cent. of the assessed valuation.

"Obligations issued in excess of the debt limitation are void; if the entire issue exceeds the limitation all obligations of the issue are void; if part of the issue exceeds the limitation, all bonds of the issue are partly void and should be reduced in amount in proportion to the amount of such excess.

["Bonds in excess of the debt limitation are not validated in the hands of bona fide holders by recitals in the bonds.]*

"Tax anticipation notes, if not originally valid, were validated by Act No. 26, Pub. Acts 1931.

"Refunding bonds issued under Act No. 271, Pub. Acts 1937,† were thereby rendered general obligation bonds even though they were not so originally.

---

* See opinion on application for rehearing, post, 713.—REPORTER.
† This act amended Act No. 13, Pub. Acts 1932 (1st Ex. Sess.).—REPORTER.

"Special assessments collected in each district are a trust fund for the payment of special assessment bonds of the district, constituting the primary source of payment of special assessment bonds which are a valid general obligation of the village, and the sole source of payment of special assessment bonds which are not a valid general obligation because issued in excess of the charter debt limitation."

Article 8, § 20, of the Constitution (1908), provides:

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts."

Article 8, § 21, of the Constitution (1908), provides:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

A contract of indebtedness in excess of the debt limit is invalid insofar as it exceeds the debt limit, but a court of equity may enforce the liability to the extent that the municipality may legally borrow where there is no difficulty in applying the proceeds of the bonds in an accounting.

It is said in 6 McQuillin, Municipal Corporations (2d Ed. Rev.), § 2398:

"Debts in excess of the debt limit, where the limit is fixed by statute and not by the Constitution, may be ratified by a subsequent statute."

The decree in the court below determined:

"Defendant is indebted to the plaintiffs, and to other holders of the obligations described in the bill of com-

plaint, for the full amount of principal and interest thereof, except for such bonds as may have been issued in excess of the debt limitation at the date of issue, and as to the bonds and interest or portions thereof in excess of such limitation, defendant is not liable.

"At any time after this decree becomes final, or in case of appeal after the order of the Supreme Court thereon is entered, on the request of either party, the case shall be referred to a circuit court commissioner to take an accounting.

"Such accounting shall ascertain the amount of valid indebtedness of the village outstanding at the time of each issue of bonds, the amount, if any, of each issue in excess of such limitation, and where any excess is found, the percentage of each bond of such issue which is void by reason of such excess.

"Such accounting shall determine the amount of special assessments collected in each district, and the amount, if any, of such collections which have not been applied in payment of the bonds of such district, also the amount, if any, of taxes pledged to the payment of tax anticipation notes and not applied thereto.

"On the completion of the accounting and approval by the court, the defendant shall distribute pro rata to the holders of all outstanding bonds of each district, whether valid as a general obligation or not, the amount shown by the accounting to belong to the special assessment fund of the district, and shall apply in payment of tax anticipation notes any taxes pledged thereto.

"After distribution of the special assessment fund of each district and the taxes pledged to tax anticipation notes, the defendant shall pay to the holders of valid general obligation bonds and notes, or to the holders of valid portions thereof, the balance of principal and interest remaining unpaid on such valid bonds and notes or valid portions thereof.

"If there be not sufficient money in the city treasury to pay the amounts hereby required, the city shall levy a tax on all taxable property in the city for the amount necessary to complete such payments, in such manner, amounts and at such times as may hereafter be determined."

In the decree the trial court directed an accounting and a report thereof from which could be determined the amount, if any, of bonds issued in excess

of the debt limitation and whether such debt limitation had been reached previous to the issue of bonds. Until such report is before the circuit court final decree as to payment upon bonds cannot be determined. Except as stated herein with reference to special assessment bonds the decree in the circuit court determining rights is affirmed, with costs to plaintiffs, and the case remanded to the circuit court for further proceedings.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.

## ON APPLICATION FOR REHEARING.

PER CURIAM. Defendants' application for rehearing is denied, but for the purpose of clarifying our opinion heretofore filed in this cause we note the following.

1. The provision in the trial court's decree that "bonds in excess of the debt limitations are not validated in the hands of bona fide holders by recitals in the bonds" will be omitted from our decision because it is not essential to determination of the instant appeal. This is so because of our holding that neither the special assessment bonds nor the tax anticipation notes are to be included in determining whether bonds were issued in excess of the 10 per cent. limitation; and the record discloses that the only other bonds issued were general obligation bonds which did not exceed in amount the 10 per cent. limitation.

2. Because of a contention to the contrary in an *amicus curiae* brief, we also note that our opinion in the instant case neither overrules nor conflicts with *Utica State Savings Bank* v. *Village of Oak Park*, 279 Mich. 568, because the subject matter involved in the cited case was purely local (the purchase of a town hall site), but in the instant case the controversy instead of being of local concern only is one of State-wide concern since it pertains to debt limitations in all Michigan home rule cities.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and BOYLES, JJ., concurred. REID, J., took no part in the decision on this application for rehearing.