BRIMMER v. VILLAGE OF ELK RAPIDS.

1. MUNICIPAL CORPORATIONS—VILLAGES—IMPROVEMENTS—STATUTES
   —AMENDMENT.
   A statute, constituting the charter of a village, may not be
   amended by the inhabitants thereof to eliminate therefrom cer-
   tain limitations upon special assessments for municipal im-
   provements (PA 1895, No 3).

2. SAME—HOME RULE—LIMITATIONS UPON TAXING POWER.
   The home-rule provisions of the Constitution which empower
   a village to amend an existing charter relating to its municipal
   concerns subject to the Constitution and general laws of the
   State and the implementing home-rule village act does not
   empower village electors to exceed general statutory limita-
   tions upon its power to tax for the purpose of paying for a
   sewer (Const 1908, art 8, §§ 20, 21; CL 1948 and CLS 1956,
   § 61.1 et seq.; CL 1948, §§ 78.1, 78.17, 78.28).

3. SAME—VILLAGES—SPECIAL ASSESSMENTS FOR IMPROVEMENTS.
   The amount of special assessment tax which a village may levy
   on private property for public improvements, its relation to
   the total value of such property, and the extent and degree
   that such assessment may approximate confiscation of property
   within the special assessment district involve and affect the
   constitutional rights of property owners, and are matters of
   general concern to the people of this State, hence, are subject
   to pertinent provisions of the Constitution and general statutes
   of the State, not being merely matters of local concern (Const
   1908, art 8, §§ 20, 21; CL 1948 and CLS 1956, § 61.1 et seq.;
   CL 1948, §§ 78.1, 78.17, 78.28).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations §§ 102–106.
[2, 3] 48 Am Jur, Special or Local Assessments § 14 et seq.
[4] 14 Am Jur, Costs § 91.

4. Costs—Public Question—Villages—Sewers—Special Assessment.

No costs are allowed in suit to enjoin the levying and collection of special assessments in excess of sums permitted by general village act, a public question being involved (Const 1908, art 8, §§ 20, 21; CL 1948 and CLS 1956, § 61.1 *et seq.*; CL 1948, §§ 78.1, 78.17, 78.28).

Appeal from Antrim; Brown (Charles L.), J. Submitted October 4, 1961. (Docket No. 15, Calendar No. 49,133.) Decided December 1, 1961. Rehearing denied July 2, 1962.

Bill by Melvin D. Brimmer and other property owners against the Village of Elk Rapids and Caroline Schuler, its treasurer, to enjoin levying or collecting special assessment in excess of sums permitted by general village act. Decree for plaintiffs. Defendants appeal. Affirmed.

*Williams, Griffin, Thompson & Coulter (K. E. Thompson,* of counsel), for plaintiffs.

*Miller, Canfield, Paddock & Stone* and *James R. Zerafa,* for defendants.

*Amicus Curiae: Dickinson, Wright, McKean & Cudlip,* in support of application for rehearing.

Dethmers, C. J. Defendant Elk Rapids is a village incorporated under PA 1895, No 3 (CL 1948 and CLS 1956, § 61.1 *et seq.* [Stat Ann 1961 Rev § 5.1201 *et seq.*]), which is its charter. Chapter 7, § 24, of that act (CL 1948, § 67.24 [Stat Ann 1961 Rev § 5.1308]), empowers village councils to construct sewers. The next section, section 25, provides in part:

"And if the council shall declare that the expense of any sewer, drain or water course, or any part of such expense, shall be paid by a special assessment upon the lands and premises benefited, then such

special assessment may be levied in a single assess-
ment, or, in the discretion of the council, the special
assessment rolls to defray the cost and expense of
such improvement may be made in 5 parts or in-
stalments." CL 1948, § 67.25 (Stat Ann 1961 Rev
§ 5.1309).

Chapter 8, § 5, of the act (CL 1948, § 68.5 [Stat
Ann 1961 Rev § 5.1353]), reads as follows:

"The costs and expenses of any improvement
which may be defrayed by special assessment shall
include the costs of surveys, plans, assessments, and
costs of construction. In no case shall the whole
amount to be levied by special assessment upon any
lot or premises for any 1 improvement exceed 25%
of the value of such lot or land, as valued and as-
sessed in the last preceding tax roll. Any cost ex-
ceeding that per cent, which would otherwise be
chargeable on such lot or premises, shall be paid
from the general funds of the village."

Chapter 9, § 5 (CL 1948, § 69.5 [Stat Ann 1961
Rev § 5.1375]), reads:

"The council may raise by special assessment upon
lands in sewer districts and special assessment dis-
tricts, for the purpose of defraying the cost and
expense of grading, paving, planking, and graveling
streets, and for constructing drains and sewers, and
for making other local improvements, charged upon
the lands in the district in proportion to frontage or
benefits, such sums as they shall deem necessary to
defray the costs of such improvements, but not to
exceed in any 1 year 5% of the assessed value of the
property in the district chargeable with such ex-
pense."

The village council, by resolution, submitted to the
electors and a majority of them voted for adoption
of amendments to the above provisions, for the pur-
pose of increasing the 5-instalment limitation on
special assessments to 20 and of eliminating the

limitations on special assessments to 25% of the value of each individual property as assessed in the last preceding tax roll and to not to exceed in any 1 year 5% of the assessed value of all of the property in the special assessment district.

Deeming the charter amendments to have become effective, the village council thereafter submitted to the electors a proposition authorizing the village to issue not to exceed $80,000 worth of special assessment bonds pledging the full faith and credit of the village, to pay for sewer construction. A majority of the electors voted for the proposition. The council then determined to make $20,000 of the cost chargeable against the village as a whole and proceeded to prepare and confirm a special assessment roll calling for assessment of $60,000 against properties in a special assessment district, to be payable in 20 instalments. The individual assessments on at least some of the properties exceeded 25% of the value thereof as assessed in the last preceding tax roll, and the sum of all the instalment assessments for each year did exceed 5% of the total assessed value of all the properties in the special assessment district, contrary to the above quoted limitations of PA 1895, No 3.

Plaintiffs are property owners in the special assessment district. They brought this action, challenging the validity of the special assessments against their properties, on the grounds that they are excessive under and in violation of the mentioned limitations of Act No 3. They prayed for an injunction against the village to enjoin assessing, levying or collecting any special tax in excess of those limitations. From decree for plaintiffs granting the injunctive relief prayed, defendant village and defendant village treasurer appeal here.

Questions as to the alleged defects in the assessing procedures, as charged by plaintiffs, which might

lead to relief greater than that granted plaintiffs by the trial court such as holding the entire assessment void altogether, we need not consider inasmuch as plaintiffs have not cross-appealed and we are in agreement with the trial court's conclusion concerning what he and we deem a question controlling of the result which that court reached, requiring our affirmance of the decree. That question: May the defendant village amend PA 1895, No 3, which is its charter, to eliminate therefrom the mentioned limitations? We agree with the trial court's answer in the negative.

There is apparent agreement between the parties that it would not have been competent for the village to make such amendments to its charter, Act No 3, prior to adoption by the people of Michigan of the Constitution of 1908 and particularly article 8, §§ 20, 21, thereof providing for enactment by the legislature of a general law for incorporation of villages and the power of village electors to adopt and amend its charter or prior to the legislature's heeding of that constitutional mandate in the enactment of the so-called home-rule act for villages, PA 1909, No 278 (CL 1948, § 78.1 et seq., as amended [Stat Ann 1961 Rev § 5.1511 et seq.]). Has that village disability been removed by adoption of these sections of the Constitution of 1908 and the mentioned legislative enactment?

The Michigan Constitution of 1908, art 8, §§ 20, 21, read as follows:

"Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Sec. 21. Under such general laws, the electors of each city and village shall have power and author-

ity to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

PA 1909, No 278, § 1, reads as follows:

"All villages within the State of Michigan, heretofore incorporated by any general or special act of the legislature, shall continue their corporate character as such villages, and any and all general and special charter provisions for the government of such villages shall continue in force until superseded, amended or repealed in accordance with the provisions of this act. All villages that now are incorporated or hereafter may be incorporated under the provisions of this act shall be subject to all general laws which have been or may hereafter be passed. They shall have a seal and may sue and be sued." CL 1948, § 78.1 (Stat Ann 1961 Rev § 5.1511).

Section 17 of the act reads, in part:

"Any amendment to any existing charter, whether passed pursuant to the provisions of this act or heretofore granted or passed by the State legislature, for the government of a village, may be submitted to the electors by a 2/3 vote of the legislative body of the village, or may be petitioned for by not less than 20% of the number of electors voting for president at the last preceding election, which petition shall be verified by the oath of the party or parties securing the same and filed with the village clerk. Every such amendment shall be submitted to the electors at the next general or special election." CL 1948, § 78.17 (Stat Ann 1961 Rev § 5.1527).

Section 28, which was added by PA 1913, No 95, reads:

"It is hereby intended by this act to re-enact sections 17, 18, 19 and 20, as above amended, pursuant

to the adoption of the amendment to section 21 of article 8 of the State Constitution by vote of the electors on November fifth, 1912, so that villages under existing charters heretofore granted by the legislature shall have the same right and power to amend such charters as villages that have adopted complete charter revisions under the act hereby amended." CL 1948, § 78.28 (Stat Ann 1961 Rev § 5.1538).

Defendants' reliance is on these constitutional and statutory provisions for authority to make the attempted amendments to its general village charter.

Conceding that there is no case directly in point, defendants urge as analogous, *Utica State Savings Bank* v. *Village of Oak Park,* 279 Mich 568, and *Gildersleeve* v. *Lamont,* 331 Mich 8. In the *Utica Case* the village charter provided that no village contract for a longer term than 1 year shall become operative until approved by 3/5 of the electors voting thereon. The village commission authorized, without approval of the electors, a land contract for village purchase of a site for a town hall, covering a term of more than 1 year. A bill was filed for foreclosure of the contract and a deficiency decree. The village raised the defense of invalidity of the contract on the ground of the charter limitation. PA 1933, No 99,* enacted after the contract had been entered into, was urged in opposition as having validated the contract by authorizing such village contracts, without approval by the electors, for terms longer than 1 year. This Court held the contract void, saying that the power to amend a village charter as to purely local matters is vested in the village electors and that the legislature is without such power; but this Court stressed that the legislature does have such amendatory powers as to matters of general

---

* See CL 1948, §§ 123.721–123.723 (Stat Ann 1958 Rev §§ 5.3461–5.3463).—REPORTER.

concern and not of purely local character. The *Gildersleeve Case* involved payment of salaries to village officers permissible under the village charter and ordinance and not prohibited by the home-rule act, but in excess of a limitation contained in PA 1895, No 3.* In upholding the salaries paid, this Court was, of course, treating with a matter of purely local character.

Defendants also cite several other cases upholding the right of village electors, under the mentioned constitutional provisions and village home-rule act, to make certain amendments to village charters. Of this there can be no doubt. Some of the cases so cited are: *Gallup* v. *City of Saginaw,* 170 Mich 195; *Village of Kingsford* v. *Cudlip,* 258 Mich 144; *Callahan* v. *City of Berkley,* 307 Mich 701, et cetera. In each, this Court, in upholding the electors' right to amend a village or city charter, was careful to say in its opinion with respect to the exercise of such right that it shall be "subject to the Constitution and general laws of the State", "not in conflict with the Constitution or general laws applicable thereto", "not contrary to the Constitution or any general statute" or, as stated in *City Commission of Jackson* v. *Hirschmann,* 253 Mich 596, 599, shall "relate to matters strictly municipal". And this follows, of necessity, from the above-quoted language from the Michigan Constitution of 1908, art 8, § 21, and section 1 of the village home-rule act. The constitutional language limits the village powers to passing laws "relating to municipal concerns" and "subject to the constitutional and general laws of this State". Section 1 of the act provides that villages "shall be subject to all general laws which have been or may hereafter be passed". Also, section 24 of the act

---

* Reference was to ch 4, § 21. See CL 1948, § 64.21. Monetary limitations have been removed by subsequent amendment. See CLS 1956, § 64.21 (Stat Ann 1961 Rev § 5.1263).—REPORTER.

(CLS 1956, § 78.24 [Stat Ann 1961 Rev § 5.1534]) permits provisions in village charters for exercise of powers, "except where forbidden, or where the subject is covered exclusively by a general law." Section 27 (CL 1948, § 78.27 [Stat Ann 1961 Rev § 5.1537]) provides: "No provision of any village charter shall conflict with or contravene the provisions of any general law of the State."

It will be noted that the Constitution, art 8, § 20, in providing for legislative enactment of a village home-rule act, provides that such act, "shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts". The statutory limitations here complained of do exactly that. Although their enactment antedates the mentioned constitutional requirement, by leaving them in effect in the 1895 act while not expressly incorporating them or comparable provisions in the 1909 home-rule act, the legislature must be deemed to have intended, by those means, to give heed to the constitutional mandate.

The nub of the dispute between parties comes down to this, then, whether the Act No 3 limitations and attempted charter amendments with respect thereto, relate to matters of strictly municipal concerns as to which certain powers reside in the electors to govern by charter provision and amendment, or are of State-wide interest subject to general laws of the State, and, specifically, whether the Act No 3 limitations are general laws of the State to which village charters and amendments are subject.

It is not decisive of that question to answer that the construction and maintenance of a sewer in a village are matters of purely local concern or, on the contrary, pertain to public health and safety and are, therefore, of general, State-wide concern. The question is not as to power to lay the sewer, but,

rather, the exercise of taxing powers for the purpose of paying for the sewer.

The amount of special assessment tax which a village may levy on private property, its relation to the total value of such property, and the extent and degree that such assessment may approximate confiscation, as charged in this case, involve and affect the constitutional rights of property owners. They are matters of general concern to the people of this State. The people recognized this in adopting Michigan Constitution of 1908, art 8, § 20, in providing that the legislature, in enacting home-rule acts, should limit city and village powers of taxation. It was equally recognized by the legislature in enacting the limitations here sought to be avoided by defendants. We think the limitations are general laws of this State of the character contemplated by article 8, § 21, to which it provides that village laws shall be subject. We see no distinction, in this respect, between villages incorporated under the 1895 act or those incorporated under or which have revised their charters to come under the provisions of the village home-rule act of 1909.

In this connection, attention should be directed to cases cited by plaintiffs, such as: *City of Kalamazoo* v. *Titus,* 208 Mich 252, and *City of Jackson* v. *Consumers Power Co.,* 312 Mich 437, (62 PUR NS 48), holding invalid city charter provisions and ordinances for fixing utility rates, which power, by State law, is conferred upon the Michigan public service commission; *Clements* v. *McCabe,* 210 Mich 207, holding that it was not competent for cities by charter and ordinance to provide for zoning of private property in the absence of a statute conferring such power; *Callahan* v. *City of Berkley,* 307 Mich 701, holding that a 10% debt limitation in the village charter was, insofar as the bond issue there involved was concerned, amended by statute which

is to be read into the charter, this Court saying that amendment by local electors in that regard was not necessary because the issue involved, as distinguished from the *Utica State Savings Bank Case,* was not "purely local", but (p 713) "instead of being of local concern only is one of State-wide concern since it pertains to debt limitations in all Michigan home-rule cities"; *City of Hazel Park* v. *Municipal Finance Commission,* 317 Mich 582, 606, in which this Court said:

"The provision in the municipal finance act, *supra,* that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes to pay the bond issue, must be read into plaintiff's charter, and controls the instant case notwithstanding the 1.8% tax limitation in the charter.";

*City of Grand Haven* v. *Grocer's Cooperative Dairy Co.,* 330 Mich 694, in which an ordinance adopted under charter authority, requiring milk delivered within the city to be pasteurized in approved milk plants within 5 miles from the city, was held invalid because in contravention of a State law. From these cases it is abundantly clear that in matters other than those of strictly and exclusively municipal concerns, statutory law is controlling over contrary charter provision, and that the contracting of debts by municipalities and levying of tax assessments to pay them are matters of not merely local but State-wide concern.

Affirmed. No costs, a public question being involved.

CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.