BOARD OF TRUSTEES OF THE POLICEMEN AND FIREMEN
RETIREMENT SYSTEM OF THE CITY OF DETROIT v CITY OF
DETROIT

Docket No. 67445. Submitted April 12, 1983, at Detroit.—Decided
June 19, 1985. Leave to appeal applied for.

In 1980, 1981 and 1982, the City of Detroit failed to pay approxi-
mately $147,000,000 in contributions to the Policemen and
Firemen Retirement System of the City of Detroit. The Board
of Trustees of the Policemen and Firemen Retirement System
of the City of Detroit retained independent legal counsel to
pursue litigation in the Wayne Circuit Court against the City of
Detroit and others to collect the amount owed. Defendant
counterclaimed, arguing that the Board of Trustees of the
Retirement System could not retain independent legal counsel
but had to rely on the city's corporation counsel for advice and
that, since it was being sued, its corporation counsel would
appoint counsel for the Board of Trustees. The court, Roland L.
Olzark, J., granted summary judgment in favor of the Board of
Trustees, finding that it could retain independent legal counsel
to pursue its claims against the city. Defendant appeals. *Held:*

1. The boards of trustees of all public employee retirement
systems are authorized by statute to independently retain
private legal counsel. The statute is clear and unambiguous on
its face and should be enforced as written.

2. The facts of the instant case clearly show that independent
legal service is necessary, since there would be an obvious
conflict of interest if the city represented the retirement system
or appointed counsel for it.

3. The fact that the city charter states that the city's corpora-
tion counsel must represent all of the city's administrative
agencies is immaterial. Where a city charter provision conflicts
with general statutory law, the statute controls in all matters
which are not of purely local character. The trial court cor-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 73 Am Jur 2d, Statutes § 142 *et seq.*
[3, 4] 60 Am Jur 2d, Pensions and Retirement § 39 *et seq.*
Employer's liability for action of trustees or similar body adminis-
tering employer's pension plan. 54 ALR3d 189.

rectly ruled that the statute controls and that plaintiff may retain independent legal counsel when necessary for the conduct of the affairs of the retirement system.

Affirmed.

R. M. MAHER, J., dissented. He disagrees with the majority holding that the statute at issue clearly and unambiguously endows an investment fiduciary with the independent authority to retain private legal counsel and to pay for that counsel with the income of the investment system even where a provision of a city charter requires the investment fiduciary to follow other procedures to obtain counsel. He would hold that the Legislature, in enacting the statute, did not intend to set aside existing structures within individual retirement systems providing for the retention of legal counsel. Furthermore, while he agrees that there may be situations under which an existing charter provision might unfairly create a conflict of interest, he does not think that the practicalities of a particular situation should affect the interpretation of a statute for all situations. He would reverse the decision of the trial court.

### OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION.

    A statute which is clear and unambiguous on its face should be enforced as written.

2. STATUTES — CITY CHARTERS — JUDICIAL CONSTRUCTION.

    General statutory law takes precedence over a conflicting city charter provision in all matters which are not of purely local character.

3. MUNICIPAL CORPORATIONS — PUBLIC EMPLOYEES — RETIREMENT SYSTEMS — RETENTION OF INDEPENDENT LEGAL COUNSEL.

    The boards of trustees of all public employee retirement systems have statutory authority to retain independent legal counsel when necessary and to pay for that counsel with the income of the investment system even where a provision of a city charter requires a board to follow other procedures to obtain counsel (MCL 38.1132 et seq.; MSA 3.981[112] et seq.).

### DISSENT BY R. M. MAHER, J.

4. MUNICIPAL CORPORATIONS — PUBLIC EMPLOYEES — RETIREMENT SYSTEMS — INVESTMENT FIDUCIARIES — RETENTION OF INDEPENDENT LEGAL COUNSEL.

    *Investment fiduciaries of public employee retirement systems are not clearly and unambiguously endowed by statute with inde-*

*pendent authority to retain private legal counsel and to pay for that counsel with the income of the investment system where a provision of a city charter requires the investment fiduciary to follow other procedures to obtain counsel (MCL 38.1133; MSA 3.981[113]).*

*Ronald Zajac,* for plaintiffs.

*Donald Pailen,* Corporation Counsel, *Mark R. Ulicny,* Deputy Corporation Counsel, and *Frank W. Jackson, Kenneth G. King,* and *Linda C. Ragland,* Assistants Corporation Counsel, for defendants.

Before: T. M. BURNS, P.J., and R. M. MAHER and CYNAR, JJ.

PER CURIAM. Defendants appeal from the trial court's order granting summary judgment in favor of plaintiff on defendants' counterclaim.

On July 1, 1982, the City of Detroit failed to pay a $39,983,039.24 contribution to the Policemen and Firemen Retirement System of the City of Detroit. The city also failed timely to pay a $92,454,926.08 contribution in 1981 and a $14,600,000 contribution in 1980, to the retirement system. Plaintiff, the Board of Trustees of the Policemen and Firemen Retirement System of the City of Detroit, retained independent legal counsel to pursue litigation to collect these sums. During the course of that litigation, the city counterclaimed arguing that the Board of Trustees for the Retirement System could not retain independent legal counsel but had to rely on the city's corporate counsel for legal advice. The city argues that since it was being sued, its corporation counsel would appoint the board of trustees' counsel. The trial court granted summary judgment in favor of the board of trustees, finding that it could retain indepen-

dent legal counsel to pursue its claims against the city.

The sole legal issue as presented by the trial court and by both parties is whether 1982 PA 55, MCL 38.1132 *et seq.;* MSA 3.981(112) *et seq.,* authorized the boards of trustees of all public employee retirement systems to independently retain private legal counsel. Defendants argue that the statute does not grant the board of trustees the power to retain independent legal counsel and, therefore, the city's charter, Art 6, Ch 4, requires that the board be represented by the city's corporation counsel or other counsel appointed by corporation counsel.

We must first determine whether MCL 38.1133; MSA 3.981(113) is ambiguous. That statute in pertinent part states: "An investment fiduciary may use a portion of the income of the system to defray the costs of investing, managing and protecting the assets of the system; may retain investment and all other services necessary for the conduct of the affairs of this system; and may pay reasonable compensation for those services". We feel that the language of this statute is unambiguous on its face. *Sneath v Popiolek,* 135 Mich App 17; 352 NW2d 331 (1984). The statute clearly states that the investment fiduciary may retain services necessary for the conduct of the affairs of the system. This language is not ambiguous because it grants the investment fiduciary broad powers. We note that, under the more specific statute governing firemen and policemen pensions, a retirement board formed under that statute shall "[r]etain legal * * * services as may be necessary for the conduct of the affairs of the retirement system and make compensations for the services retained". MCL 38.552(2); MSA 5.3375(2).

Where a statute is clear and unambiguous on its

face, it should be enforced as written. *In re Chavez Estate,* 127 Mich App 430; 339 NW2d 35 (1983). The issue before us then is whether independently retained legal service is necessary for the conduct of the affairs of the Policemen and Firemen Retirement System of the City of Detroit. The facts of the instant case clearly show that such independent legal service is necessary. The city has repeatedly failed timely to make large contributions to the retirement system. We feel that there would be an obvious conflict of interest if the city represented the retirement system or appointed counsel for the retirement system. Defendants should not be allowed to choose their own opposing counsel. Code of Professional Responsibility, Canon 5 and DR 5-105, DR 5-107. The city may neglect its alleged duty to represent the retirement system, especially when the system is claiming that the city owes it millions of dollars. In fact, in defense of the underlying action, the city claimed that it had no legal obligation whatsoever to pay the contributions on the date they were due. Under these circumstances, we do not feel that the retirement system would be properly represented by the city's corporate counsel or by other counsel appointed by the corporate counsel. We believe that independent legal counsel was necessary for the conduct of the affairs of the system.

The city also relies on a provision of its charter which states that the city's corporate counsel must represent all of the city's administrative agencies. Where a city charter provision conflicts with general statutory law, the statute controls in all matters which are not of purely local character. *Brimmer v Village of Elk Rapids,* 365 Mich 6, 12-13; 112 NW2d 222 (1961). The statute and charter involved in the instant case conflict since the statute provides that plaintiff may choose its own

legal counsel and the charter provides that defendants shall choose plaintiff's legal counsel. We are unable to find that the Policemen and Firemen Retirement System is strictly and exclusively a municipal concern. The procurement of legal counsel to represent the Board of Trustees of the Retirement System primarily concerns the city's policemen and firemen and not the general public. We note that MCL 38.1133; MSA 3.981(113), which states that the provisions of this act shall supersede any investment authority previously granted to a system under any other law of this state, further supports our position. We therefore feel that the lower court correctly ruled that the statute, MCL 38.1133; MSA 3.981(113), controls and that plaintiff may retain independent legal counsel when necessary for the conduct of the affairs of the system.

Affirmed.

R. M. Maher, J. *(dissenting).* I respectfully dissent. I do not agree with the majority that the language of 1982 PA 55, as contained in MCL 38.1133; MSA 3.981(113), clearly and unambiguously endows an investment fiduciary with the independent authority to retain private legal counsel and to pay for that counsel with the income of the investment system even where a provision of a city charter requires the investment fiduciary to follow other procedures to obtain counsel. The statute is not clear and unambiguous in its discussion of an investment fiduciary's authority to hire legal counsel. While such counsel is arguably within the definition of "all other services necessary for the conduct of the affairs of the system", the statute does not specify how such counsel is to be retained. Thus, even if legal counsel is included in the "other services" provision, there is nothing

which clearly or necessarily prohibits the city charter from requiring the use of corporation counsel by the investment fiduciary. Under these circumstances, I believe the Court must look to the Legislature's intent when it enacted the new provision. *Scannell v Michigan Public School Employees Retirement System,* 134 Mich App 231, 236; 351 NW2d 285 (1984), *lv den* 419 Mich 946 (1984).

In this case, 1982 PA 55 replaced 1965 PA 314. 1965 PA 314 was enacted "to authorize the investment of funds of public employee retirement systems or plans created and established by the state or any political subdivision". The act set out precise conditions and limitations under which a retirement system could invest its assets, including monetary and proportional limitations on the amount of assets which could be invested. See MCL 38.1121 *et seq.;* MSA 3.981(101) *et seq.* In addition, 1965 PA 314 specifically detailed the types of investments authorized for the retirement systems. When 1982 PA 55 repealed the provisions of 1965 PA 314, it replaced the narrow investment authority with a broader range of investment opportunities for the investment fiduciary by enlarging the amount, proportion, and forms of investment opportunities authorized. The new act also revised the standard of care owed by the fiduciary to the retirement system, redefined the term "investment fiduciary", and defined and listed the responsibilities of the investment fiduciary to the system. MCL 38.1132 *et seq.;* MSA 3.981(112) *et seq.* It was in this context that the Legislature inserted the language of MCL 38.1133(4); MSA 3.981(113)(4), permitting use of the income of the system to finance necessary services for the system and permitting the retention of those services by the investment fiduciary. I can find nothing in this context which provides

that an investment fiduciary may ignore existing charter provisions which permit the use of legal counsel by the investment fiduciary but require the use of already-retained corporation counsel unless the city waives the requirement.

I can also find nothing in the House analysis of 1982 PA 55 to suggest that the Legislature intended to abolish the existing municipal system with its various provisions which provide checks and balances within the management of an individual retirement system. The new act was devised to remedy the stultifying effects of the limitations on investment opportunities found in 1965 PA 314. As stated in the First Analysis of House Bill 4272 (which became 1982 PA 55): "[T]hese limitations are both restrictive and vague by modern standards. * * * Some persons feel that a great resource is being lost to the state and that large unnecessary costs are being borne by state and local governments in the form of retirement contributions because of the inadequacies of the present system. These people believe that laws governing the investment of public employee retirement funds should be consolidated, clarified, and adapted to the realities of the present investment market". As stated in the House analysis, the changes to be accomplished by the new bill would include: (1) "a more thorough set of definitions than are now contained in law * * *"; (2) the implementation of a "prudence standard" and "investment guidelines" taken from the Employee Retirement Income Security Act (ERISA) and from the Michigan law regulating trust funds in place of the former "prudence standard" of "all necessary diligence and care"; (3) the specific authorization for an investment fiduciary to consider "diversification, liquidity, and the enhancement of the general welfare of the state" in making invest-

ments; (4) the authorization to "pay the costs of investing and managing a system's funds by deducting up to one-tenth of one percent of the fund's assets annually, subject to a legislative appropriation"; and various other specific authorizations to invest in stock, insurance companies, and other forms of investments. Of these proposed changes, only a limited discussion is devoted to the language of MCL 38.1133(4); MSA 3.981(113)(4):

"Funding
"An investment fiduciary would be authorized to pay the costs of investing and managing a system's funds by deducting up to one-tenth of one percent of the fund's assets annually, subject to a legislative appropriation.

\* \* \*

"Fiscal Implications:

\* \* \*

"The investment of retirement funds would be paid for by a 'deduct' of one-tenth of one percent of the assets rather than being subject to the annual appropriations wars. Boilerplate language will have to be introduced into the general government appropriations bill annually to implement this funding system. One-tenth of one percent of the current state portfolio is $6 million. This is a cap on administrative expenses which the treasury department does not expect to approach.

"The investment bureau of the treasury is presently staffed by 27 people, although they had requested a staff of 36 for this fiscal year. The demands of this bureau's expanded investment authority will necessitate an increase in personnel. The venture capital investment authority in particular is likely to require substantial staffing. In future years, if this bill is enacted, the staff will have to grow but the treasury does not expect that it would ever exceed 50 people. Even this outside figure would remain well within the deduct cap and a fraction of the projected savings.

"Arguments:

\* \* \*

"For:

"Allowing the investment bureau of the treasury to be funded by a 'deduct' will complement the flexibility of its investment program. Administrators must be able to hire sufficient skilled people to exploit opportunities and to oversee carefully new investments. To risk the loss of such personnel for short-term budget cuts is dangerous."

It is clear that these comments address the subject of funding, rather than the subject of legal counsel. In light of the absence of any mention of independent legal counsel or an intent to set aside existing structures within individual retirement systems providing for the retention of legal counsel, I can only conclude that the Legislature did not, in fact, set aside those structures.

I agree with the majority that there may be situations under which the existing charter provisions might unfairly create a conflict of interest. Where that is the case, the charter itself may certainly be challenged. However, I do not believe that the practicalities of a particular situation should affect our interpretation of a statute for all situations. I would reverse the decision of the trial court.