BARKLEY v CITY OF DETROIT

Docket No. 141932. Submitted October 5, 1993, at Detroit. Decided
    March 21, 1994, at 9:15 A.M.

    Phillip Barkley and eight others, all Detroit police officers and
    members of the Detroit Police Officers Association, brought an
    action in the Wayne Circuit Court against the City of Detroit,
    seeking a declaration that the city was obligated to pay for
    counsel chosen by the plaintiffs to defend them in civil actions
    brought against them for alleged acts of police misconduct. The
    plaintiffs argued that the attorneys from the city's law depart-
    ment who were representing them in the respective underlying
    actions were required to withdraw as their counsel because a
    conflict of interest arose once the city's corporation counsel
    recommended to the city council pursuant to the city code that
    the city should not provide representation of the plaintiffs. The
    court, Marianne O. Battani, J., found that a conflict of interest
    arises when the city council refuses to provide representation
    and the plaintiffs are required to seek to overturn the council's
    decision through arbitration pursuant to the collective bargain-
    ing agreement between the city and the Detroit Police Officers
    Association and that once the conflict arises, the city is obli-
    gated to pay for each plaintiff to be represented in the underly-
    ing actions by independent counsel to be chosen by the city
    rather than the plaintiff. The court further found that no
    conflict of interest exists before the city council makes an
    adverse determination concerning representation. The plaintiffs
    appealed.

    The Court of Appeals held:

    1. Although there may be some question whether the case
    should be dismissed for want of actual case or controversy,
    review on the merits was undertaken because the case presents
    questions of public significance that may be repeated and yet
    evade review.

    2. Dual representation of the city and a police officer by the

REFERENCES

Am Jur 2d, Attorneys at Law §§ 184, 188, 198.
See ALR Index under Attorney or Assistance of Attorney; Ethics
    and Ethical Matters.

city's law department where both the city and an officer are named as defendants creates a situation in which the potential for a conflict of interest precludes such dual representation. Further, the city's law department should be treated like a law firm; accordingly, the potential conflict cannot be avoided by having separate attorneys from the law department represent the separate interests of the officer and the city.

3. The city charter and code and the collective bargaining agreement obligate the city to provide counsel to police officers being sued for activities done in the course of official duties. That obligation implies that independent and unbiased counsel will be provided. There is no provision that entitles the officers to select their own counsel at city expense. The city may discharge its obligation by selecting as counsel for the officers in the underlying cases attorneys who are independent and unbiased and have none of the ethical problems associated with representation by the city's law department.

Affirmed in part and reversed in part.

TAYLOR, P.J., dissenting, stated that the trial court had no authority to hear this matter, but, even if it did, it was bound to find that any conflict of interest was waived by the collective bargaining agreement, assuming that the procedures for handling conflicts were the same in 1977 as those exercised in this case. The collective bargaining agreement continued in effect the conflict resolution procedures in effect on July 1, 1977.

ATTORNEY AND CLIENT — CONFLICTS OF INTEREST — MUNICIPAL CORPORATIONS.

The potential for a conflict of interest arising as a result of the representation by an attorney of a city law department of both the city and a police officer of the city in a suit alleging police misconduct where both the city and the officer are named as defendants is so great as to preclude such dual representation; because a city law department should be treated in the same manner as a private law firm, representation by separate attorneys of the same law department does not eliminate the potential for a conflict of interest.

*Rubenstein, Isaacs, Haroutunian & Sabel, P.C.* (by *Allan D. Sobel* and *Casimir J. Swastek*), for the plaintiffs.

*William G. Ashworth,* Assistant Corporation Counsel, for the defendant.

Before: Taylor, P.J., and Hood and B. A. Jasper,* JJ.

Hood, J. This is an action for declaratory judgment[1] concerning the duty of defendant, the City of Detroit, to provide legal counsel to police officers being sued for injuries allegedly inflicted by the officers during the performance of their official duties. Plaintiffs, who are all police officers and members of the Detroit Police Officers Association (DPOA), and the City of Detroit were named as defendants in nine separate civil suits that alleged various acts of police misconduct. At issue is whether ethical considerations prevent attorneys from the city's law department from fulfilling the city's obligation to provide counsel for plaintiffs in those civil actions.

Plaintiffs appeal as of right from the trial court's partial denial of their motion for summary disposition under MCR 2.116(C)(10). Defendant does not cross appeal. We affirm in part and reverse in part.

The Detroit Charter, § 6-403 provides that, "[u]pon request, the corporation counsel may represent any officer or employee of the city in any act or proceeding involving official duties."[2] "Official duties" are defined in Detroit Code, art XI, § 13-11-1 as "acts done pursuant to authority conferred by law or within the scope of the employment or in relation to matters committed by law to the officer or employee's control or supervision

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Contrary to the dissent's argument, plaintiffs are not suing to enforce the Michigan Rules of Professional Conduct or to collect damages for the violation of those rules. Rather, plaintiffs seek declaratory judgment interpreting the Detroit Code in light of the rules.

[2] Under § 6-401 of the charter, the corporation counsel is the appointed head of the city law department.

or committed to the department or office under whose authority the officer or employee is acting, whether or not there is negligence in the doing of such acts." However, the same section states that, "[w]here there is willful misconduct or lack of good faith in the doing of such acts, the same shall not constitute the performance of the official duties of any appointive officer or employee of the city within the operation or effect of this article." Detroit Code, art XI, § 13-11-2 further provides that, with the approval of city council, the city may satisfy judgments against employees who become legally obligated to pay damages for injuries resulting from the good-faith performance of their official duties.

In order to be eligible for city-provided counsel and reimbursement, an employee who is sued must follow the procedure outlined in Detroit Code, art XI, § 13-11-3. In pertinent part, that procedure requires that notice be provided to the corporation counsel and that a written request for an attorney be submitted to the employee's department head. The department head is required to transmit the request to the corporation counsel, who then, under Detroit Code, art XI, § 13-11-4, prepares a report and recommendation for the city council. Under Detroit Code, art XI, § 13-11-5, the city council is required to consider the report and recommendation and to determine whether the suit arises out of or involves the good-faith performance of the employee's official duties and whether the employee shall be represented by the corporation counsel.[3]

---

[3] The parties seem to assume that the discussion of the reports and recommendations envisioned by these sections are to be done in public sessions of the city council. Although this was not an issue decided below, given the potential for the dissemination of information that might hurt the employees in the underlying cases, we wish to alert the parties to the possibility that such disclosure may not be

Detroit Code, art XI, § 13-11-5 provides that the corporation counsel shall represent an employee in an underlying suit until the city council determines otherwise. It also provides that the city council's decision is final and binding. However, the collective bargaining agreement between the city and the DPOA covering plaintiffs in this case modifies the requirements of the city code by providing that the city council's determination is subject to final and binding arbitration and that representation will be provided in the underlying suit until the conclusion of arbitral proceedings.[4]

Plaintiffs argue that as soon as the city's corporation counsel (acting through the city's law department) decides to recommend to the city council that no representation be provided, a conflict of interest arises. This conflict, they argue, requires that the corporation counsel withdraw from representing them in the underlying suit. Thus, in order to meet its obligations under the city code and the collective bargaining agreement, the city must pay for plaintiffs to be represented by attorneys of their own choosing. We disagree in part.

In this case, seven of the nine plaintiffs were

required by either the Freedom of Information Act or the Open Meetings Act. See MCL 15.243(1)(n); MSA 4.1801(13)(1)(n) (communications between employees and officials of public bodies); MCL 15.243(1)(h); MSA 4.1801(13)(1)(h) (attorney-client communications); MCL 15.268(e); MSA 4.1800(18)(e) (discussion of pending litigation); MCL 15.268(h); MSA 4.1800(18)(h) (other materials exempted from disclosure by law); see also *Detroit News, Inc v Detroit,* 185 Mich App 296, 302-304; 460 NW2d 312 (1990); OAG, 1985-86, No 6358, p 268 (April 29, 1986).

[4] We disagree with the dissent's view that the collective bargaining agreement should be found to have waived any conflict of interest existing in this case. It is plaintiffs who are being represented by the city attorney—not the union—and, therefore, only plaintiffs are the lawyer's clients. There is no authority in the rules of professional conduct that would allow a nonclient such as the union to waive a conflict of interest on behalf of a client. In fact, not even those who pay a lawyer on behalf of a client are allowed to interfere in the relationship between lawyer and client. See MRPC 1.8(f).

granted representation by the city council. Only two requests were denied, and those denials are being challenged through arbitration. Further, at least two of the underlying lawsuits have been settled. Therefore, the question arises whether this case should be dismissed for want of an actual case or controversy. We hold that this case presents questions of public significance capable of repetition and yet evading review, and therefore, we will, consider it on its merits. *Pearson v Macomb Co Election Comm,* 199 Mich App 170, 171; 500 NW2d 746 (1993).

The trial court held that there is indeed a conflict of interest that arises when the city council refuses to provide representation and an employee seeks to overturn that decision through arbitration. That conflict arises because the corporation counsel would be representing the employee in the underlying suit while at the same time representing the city in the arbitration proceeding, in effect, arguing for the employee in one forum and against the employee in another. The parties do not challenge this determination, which we agree is a correct holding.

The trial court also held that, once a conflict arises, the city should pay for the employee to be represented in the underlying suit by independent counsel. However, the court concluded that such independent counsel was to be chosen by the city, not by the employee. The court further found that no conflict of interest existed before an adverse determination by the city council. Plaintiffs take issue with these last two determinations.

Plaintiffs, by virtue of being represented by the city's corporation counsel in the underlying suits, are the corporation counsel's clients. See *Atlanta Int'l Ins Co v Bell,* 438 Mich 512, 520-521; 475 NW2d 294 (1991) (insured is the client of the

lawyer hired by the insurance company). Thus, under the Michigan Rules of Professional Conduct, the corporation counsel owes certain duties to plaintiffs, including the duty to "act with reasonable diligence and promptness" (MRPC 1.3), to keep plaintiffs informed (MRPC 1.4), to not reveal confidences (MRPC 1.6), and so forth. However, under § 6-403 of the city charter, the corporation counsel is also the city's attorney and, therefore, owes the city all of the same duties that it owes plaintiffs. Compare *Atlanta Int'l, supra* at 518-521 (an insurance company and the counsel it retains for its insured have something less than an attorney-client relationship). Plaintiffs argue that a conflict therefore arises when the corporation counsel represents both the city and an employee in an underlying suit while at the same time arguing to the city counsel that no representation should be provided. We agree.

MRPC 1.7(a) provides:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the attorney reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.

MRPC 1.7(b) provides:

[A] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.

Similarly, MRPC 1.6(b) provides:

> [A] lawyer shall not knowingly:
> (1) reveal a confidence or secret of a client;
> (2) use a confidence or secret of a client to the disadvantage of the client; or
> (3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

See also MRPC 1.6(c)(1). Further, "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3." MRPC 1.8(b).

Also relevant to this case is MRPC 1.8(f), which provides:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client consents after consultation;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> (3) information relating to representation of a client is protected as required by Rule 1.6.

Additionally,

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client consents after consultation, including disclosure of the existence and nature of all the claims . . . involved and of the participation of each person in the settlement. [MRPC 1.8(g).]

The Supreme Court Rules Concerning the State

Bar of Michigan establish a Board of Commissioners that appoints a standing committee regarding professional and judicial ethics. SBR 5, § 1(b)(2)(J). That committee is established under Article VI of the Bylaws of the State Bar of Michigan. Pursuant to that article, the committee may, among other things, express "its written opinion concerning the propriety of professional and judicial conduct when requested to do so by" certain enumerated officers, "or a member of the judiciary or any member of the State Bar who inquires concerning his/her own contemplated conduct." These opinions, of course, are not binding on this Court. We find them instructive, however, and note that the committee is also charged with "recommend[ing] amendments to the Michigan Rules of Professional Conduct, to the Code of Judicial Conduct and other standards of professional conduct" and with "review[ing] all such amendments proposed by other State Bar entities before they are acted upon."[5] We therefore will refer to some of the committee's formal and informal opinions to the extent that we conclude that they provide some guidance in the conflict before us.

The Ethics Committee has said that the conflict of interest rules are " 'a frank recognition that, human nature being what it is, a dual relationship involving adverse or conflicting interests, constitutes enormous temptation to take advantage of one or both parties to such relationship' " and that " '[t]he purpose of [the conflict of interest rules] is to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom.' " Formal Opin-

[5] Under Article VI of the Bylaws of the State Bar of Michigan, the Attorney Discipline Board, the Attorney Grievance Commission, and the Judicial Tenure Commission are supervised by the Grievance Committee, not by the Committee on Professional and Judicial Ethics.

ion 160 (November 1954), quoting Formal Opinion 132 (January 1950). We agree with that statement.

An attorney owes undivided allegiance to a client and usually may not represent parties on both sides of a dispute. For example, in *Olitkowski v St Casimir's Savings & Loan Ass'n,* 302 Mich 303, 309-310, 325-326; 4 NW2d 664 (1942), a clear conflict of interest was found where an attorney representing an estate advised its administratrix to invest in a certain savings and loan association that he also represented, without disclosing that the investment was illegal. In *Bd of Trustees of the Policemen & Firemen Retirement System v Detroit,* 143 Mich App 651, 655-656; 373 NW2d 173 (1985), it was held that a city may not use its law department to meet its obligation to provide counsel to a retirement fund where the fund was suing the city for failure to make contributions and the city was asserting that it had no duty to pay and was itself being represented by its law department. Similarly, where a fire fighter was charged with reckless driving after he was involved in an accident on the way to a fire, the city could not satisfy its statutory obligation to provide him with an attorney by assigning an attorney from its law department where another attorney from its law department was prosecuting the case. Formal Opinion 109 (October 1947). In that situation, it was concluded that the city could select an independent attorney, provided the attorney was not barred from the case by ethics considerations, to satisfy its statutory obligation to provide counsel to the fire fighter in question.

It is also clear that an attorney may only undertake to represent a new client against a former client where all business ties with the former client have been severed, where the subject matter of the current representation is not substantially

related to a matter in which the attorney represented the former client, and, further, where there is no confidential information received from the former client that is in any way relevant to representation of the current client. See *General Electric Co v Valeron Corp,* 608 F2d 265, 267 (CA 6, 1979); see also Informal Opinions CI-619 (March 30, 1981), CI-516 (May 5, 1980), and CI-354 (May 25, 1978). The Ethics Committee has also indicated:

> Where a City Attorney rendered advice on a matter to members of City Council who later sued the City over the same matter, the City Attorney may defend the City in the case only if he did not gain and did not appear to gain confidential information from the council members involved and if his contact with them would not affect or appear to affect his independent professional judgment on behalf of the City. [Informal Opinion CI-335 (January 16, 1978).]

It is less clear what is allowed when the parties are not in direct conflict. Thus, the committee has concluded:

> Where a city's law department has formerly opined on a matter in controversy between the Mayor and the City Council of that City, the City law department may not represent both the Council and the Mayor in litigation, (declaratory judgment action) to resolve the controversy, even if both adverse parties consent to the dual representation. [Informal Opinion CI-811 September 17, 1982).]

However, the Ethics Committee has also concluded that while a city attorney who advises the city on labor relations matters was barred from sitting on an arbitration panel that reviews employee griev-

ances because the attorney would essentially be reviewing the effects of the attorney's own advice, a different attorney from the city's law department who had no involvement in labor relations was not so barred. Informal Opinion RI-47 (April 11, 1990). The committee similarly concluded that while a county attorney who advises the sheriff's department on how to handle a certain matter may not later decide whether to file criminal charges in the same matter because the attorney also would be—at least potentially—reviewing the attorney's own advice, a different county attorney may both decide whether to file charges and try the case, even if the first attorney is to be called to testify. Informal Opinion RI-96 (August 16, 1991).

At a minimum, it becomes clear to us from our review of the pronouncements that have been made in this area and our review of the Rules of Professional Conduct that an attorney from the city's law department may not first interview an employee concerning an underlying suit, thus obtaining confidential information, and then use that information to argue to the city council that no representation should be provided in the underlying case because the particular employee was not acting in good faith within the scope of employment. It is quite clear that such conduct would be a prohibited use of confidential information obtained from one client for the benefit of another client. MRPC 1.6(b); MRPC 1.8(b). Thus, if this were the only issue, we would now consider whether a different attorney from the city's law department, properly screened from any exposure to confidential information obtained from an employee, could argue to the city council that no representation should be provided in the underlying case. However, because the city's law department represents both the city and the particular

employee in the underlying suit, we must still
decide whether that in itself creates an impermis-
sible conflict of interest. We find that it does.

The ethical issue presented is whether the repre-
sentation of these individual plaintiffs by an attor-
ney from the city's law department "may be mate-
rially limited by the lawyer's responsibilities" to
the city, given that these plaintiffs obviously do
not wish to consent to such dual representation.
See MRPC 1.7(b). In such a situation, the parties
seem to agree that an actual conflict is unlikely
because access to the party perceived to have the
deeper pockets would be obtained by showing that
the employee acted within the scope of employ-
ment, thereby imposing liability on the city. How-
ever, there is a danger that the evidence will show
otherwise and liability will rest solely on the
individual plaintiff. Because of that danger, we
agree with the Ethics Committee that,

> [a]lthough the [Rules of Professional Conduct]
> would not automatically prohibit a city attorney
> from representing both the city and the police
> officers in a suit brought against both, alleging
> police brutality, the best policy would be for the
> city attorney to decline representation of the po-
> lice officers because of possible conflicts that may
> arise under the [Rules of Professional Conduct]
> which could cause harm to either client because of
> necessity of the attorney withdrawing from repre-
> sentation of one or both parties at a critical stage
> of the proceedings. [Informal Opinion CI-475 Feb-
> ruary 18, 1980)].

We also note that Detroit Code, art XI, § 13-11-
3(4) requires the plaintiff employee to consent to
any city-approved settlement of the underlying
suit as a condition of city-paid representation.
However, a lawyer representing both the plaintiff

and the city "shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client consents after consultation." MRPC 1.8(g). Thus, although an employee's refusal to consent to a settlement may somehow be actionable—a question which we do not decide—an attorney representing both an employee and the city ethically could not settle the suit simply on the strength of the charter's mandate.[6]

Additionally, Detroit Code, art XI, § 13-11-3(3) imposes upon employees an obligation to cooperate with the corporation counsel in defending the underlying suit by attending hearings, giving evidence, and procuring the attendance of witnesses. Further, the section prohibits employees from settling, paying for, or incurring any costs, except at their own expense. These two provisions are in at least potential conflict with MRPC 1.8(f)(2), which prohibits a lawyer from accepting compensation from a third party unless "there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship." See *People v White,* 127 Mich App 65, 67-68; 338 NW2d 556 (1983).

As a whole, the various conflicting or potentially conflicting obligations reviewed above lead us to conclude that an attorney with the city's law department reasonably could not believe that representation of plaintiffs while also representing the city would not be materially limited or adversely affected by the attorney's preexisting duties to the city. See MRPC 1.7(b). Therefore, such dual representation should not be undertaken.

[6] For example, the city could refuse to pay for a plaintiff's attorney or could refuse to indemnify a plaintiff who refused to settle the underlying suit.

We now return to the issue whether the city's law department should be treated in the same manner as a private law firm, so that the disqualification of one attorney should be imputed to others. See MRPC 1.10. We find that it should.

The general rule is that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a) or (c), or 2.2." MRPC 1.10(a). While government lawyers are not mentioned in the rule, it appears that, at least in some circumstances, this rule applies to them.

It might be argued that a so-called "Chinese wall" might be erected such that a disqualified attorney would have neither any role in the case nor any contact with the attorneys actually involved in the case, so that the result would be the same as if two separate firms were involved. But see *People v Doyle,* 159 Mich App 632, 646; 406 NW2d 893 (1987) (entire prosecutor's office disqualified where supervisory attorney with personal interest in case was not immediately shielded from any involvement).

The present case, however, does not involve a particular attorney with a particular disqualification. Rather, because all attorneys in the department represent the city and owe it the duties discussed above, none of them are free to also represent an individual employee once a conflict arises. See MRPC 1.10(a). For this purpose, we find that the department should be considered a law firm.

We, therefore, hold that, assuming that the city law department is representing the city in the underlying suit, no attorney from the city law department may also represent plaintiffs in the

same suit.[7] This, however, does not mean that plaintiffs should be allowed to choose who will represent them at city expense.

Where there is an obligation to provide counsel, it is implied that independent and unbiased counsel will be provided. See *Bd of Trustees, supra* at 655-656. However, there appears to be some possible confusion regarding when the city will be allowed to choose the attorney who will fulfill the city's contractual obligation to provide representation. Thus, in the *Bd of Trustees* case, where the city was being sued by a retirement fund and there were conflicting statutory sections—one allowing the fund to choose its own counsel and one requiring the city to appoint counsel for the fund —this Court found that the fund rather than the city should be allowed to choose. We note, however, that in Formal Opinion 109 (October 1947) the Ethics Committee concluded that where a statute required the city to provide an independent and unbiased lawyer for a fire fighter charged with driving recklessly during the course of his employment, the city should be allowed to select an attorney to represent him even though the fire fighter was being prosecuted by the city's corporation counsel.

In the case at bar, there is no statute that even arguably gives plaintiffs the right to select their own counsel at city expense. Also, unlike in the *Bd of Trustees* case, there is no direct conflict here, because these plaintiffs are being sued with the city, not by the city. We therefore hold that the city may select plaintiffs' counsel in the underlying cases as long as it selects an independent and

[7] We do not decide whether different departments of, for example, the Attorney General's office, may represent parties on both sides of a dispute. Although some references were made in this regard, that is not an issue before us.

unbiased counsel with none of the ethical problems discussed above, specifically MRPC 1.8(f) and 1.8(g). This may be done through a prepaid legal plan or by contracting with independent counsel, as long as appropriate safeguards are in place.

Affirmed in part and reversed in part.

B. A. JASPER, J., concurred.

TAYLOR, P.J. *(dissenting)*. The majority adopts the position that it is appropriate to make a judicial finding that there was a conflict of interest inherent in representation of both plaintiff police officers and the City of Detroit by an attorney from the office of the Detroit corporation counsel. In taking this position, the majority relies upon the Michigan Rules of Professional Conduct to establish that there was, in fact, a conflict of interest. I disagree with the majority's analysis on the grounds that there was no jurisdiction for the trial court to hear this matter and that, if there was a conflict of interest, it was waived by the plaintiffs.

MRPC 1.0(b) specifically disclaims the creation of a cause of action based on its provisions:

> The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. In a civil or criminal action, the admissibility of the Rules of Professional Conduct is governed by the Michigan Rules of Evidence and other provisions of law.

There is then *no jurisdiction for plaintiffs'* cause of action based on the MRPC. This is reinforced in the comment to MRPC 1.13 as follows:

Governmental Agency

    The duty defined in this rule applies to governmental organizations. However, when the client is

a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified because public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulations. Therefore, defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. In some circumstances, it may be a specific agency, but in others it may be the government as a whole. For example, if the action or failure to act involves the head of a bureau, the department of which the bureau is a part may be the client for purpose of this rule. With these qualifications, the lawyer's substantive duty to the client and reasonable courses of action are essentially the same as when the client is a private organization.

This limitation in the use of the MRPC is never addressed by the majority. Further, in none of the cases cited does a court review a conflict of interest except where a claim of conflict is raised in an existing lawsuit by the opposing party. There simply are no cases of which I am aware, nor I assume of which the majority is aware, where a party seeks conflict relief concerning the party's own lawyer. That person's remedy is to discharge the attorney, bring a grievance, or, perhaps, sue for malpractice.

Even if there is a conflict of interest over which the trial court could take jurisdiction, under MRPC 1.7(b)(2), a client can consent, after being made aware of a potential conflict, to representation by the lawyer having the potential conflict of interest. Indeed, MRPC 1.13(e) expressly anticipates dual representation, and, as the above com-

ments make clear, greater latitude is allowed for government lawyers engaged in such representation. It is my view that plaintiffs must be held to have consented or waived the conflict pursuant to the collective bargaining agreement entered into by the union in this matter.

Detroit Charter, § 6-403, and Detroit Code, art XI, §§ 13-11-1, 13-11-2, 13-11-3, 13-11-4, and 13-11-5, as quoted by the majority, outline the various ordinances providing for the method of representing an employee who is sued while simultaneously determining whether the city should cover that person, i.e., whether the incident for which the employee is being sued arises out of or involves the performance in good faith of the official duties of the officer or employee. In this regard, § 28 of the collective bargaining agreement says:

> The city will continue to defend and indemnify employees in accordance with Section 13-11-3 of the 1984 municipal code and all practices and procedures related thereto, in effect July 1, 1977, except that *such defense and indemnification is mandatory upon a finding that the claim, demand or suit against the employee arises out of or involves the performance in good faith of the official duties of the employee. A contrary determination by the city council is not final and binding as provided by the code but is subject to review by an arbitration panel under Article 8 of this agreement. Pending a final determination of whether or not the employee is entitled to defense and indemnification by the city, the city shall promptly undertake such defense on behalf of such employee.* [Emphasis added.]

Here, the union entered into a contract to have done exactly what was done.[1] The union did not

---

[1] Notable here is the fact that the union, by way of negotiation,

specify that there would be a "Chinese wall"
whereby the lawyer who was working on the
defense and indemnification of plaintiff police
officers would have nothing to do with the lawyer
who was working on the presentation to the city
council. Rather, they simply took the ordinance
and method of handling such matters in effect on
July 1, 1977, and continued that method. If conflict
problems were handled by the same procedure in
1977, a question I would remand to decide, then
the union contract controls and bars relief for
plaintiffs.

This is so because an employee is bound by the
contract that his union has negotiated for him.
*Farmington Hills v Farmington Hills Police
Officers Ass'n,* 79 Mich App 581, 589; 262 NW2d
866 (1977), holds that the public employee rela-
tions act (PERA), MCL 423.201 *et seq.*; MSA
17.455(1) *et seq.,* accords broad bargaining author-
ity to the designated representative of the police
officers. Further, our Michigan courts have held
that the PERA should be interpreted consistently
with the National Labor Relations Act (NLRA), 29
USC 151 *et seq.,* noting that federal case law
interpreting the NLRA broadly construes the desig-
nated representative's authority.

> The statute [29 USC 159] contemplates the mak-
> ing of agreements by representatives of the em-
> ployees, not by the employees themselves, giving
> "statutory approval to the philosophy of bargain-
> ing as worked out in the labor movement in the
> United States." [*NLRB v Darlington Veneer Co,*
> 236 F2d 85, 89 (CA 4, 1956), quoted in *Farmington
> Hills, supra,* p 590.]

secured for its members additional protection over and above that
afforded nonunion employees, namely an arbitration procedure if the
employee lost following exhaustion of the ordinance-provided proce-
dures.

Congress has given unions wide authority and great discretion to reconcile the competing interests of the employees whom they represent so that they might speak with one voice when they confront management at the bargaining table. . . . Congressional validation of collective action, however, necessarily involves extinguishing many of the contract and economic rights belonging to union members and, instead, vesting the power to act in their behalf with their chosen representative, the union. [*Crenshaw v Allied Chemical Corp*, 387 F Supp 594, 598-600 (ED Va, 1975), quoted in *Farmington Hills, supra*, p 590.]

Here, the collective bargaining agreement has extinguished plaintiffs' right to challenge the conflict in this case, and I accordingly would hold that plaintiffs are bound, just like the Farmington Hills police officers were, by the contract that their union negotiated for them.

An employee may attack a contract as being in violation of a union's duty of fair representation. However, a union's activities in this regard only can be held to be arbitrary, and as such to constitute a breach of the duty of fair representation, if the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots Ass'n, Int'l v O'Neill*, 499 US 65; 111 S Ct 1127; 113 L Ed 2d 51 (1991). Such a standard could not be met here.

In summary, I would hold that the trial court had no authority to hear this matter, but that, even if it did, it was bound to find that any conflict of interest was waived by the union contract (assuming, upon remand, it is determined that the procedures for handling conflicts were the same in 1977 as those exercised in this case).