EVANS & LUPTAK, PLC v LIZZA

Docket No. 223927. Submitted January 10, 2002, at Detroit. Decided May 3, 2002, at 9:05 A.M. Leave to appeal sought.

The law firm of Evans & Luptak, PLC, brought an action in the Wayne Circuit Court against attorneys John B. Lizza and Dennis A. Dettmer, seeking the enforcement of an agreement under which the plaintiff was to receive a referral fee from the defendants for recommending the defendants to a person who pursued a wrongful death action against a decedent's estate whose personal representative was a client of the plaintiff. The referral fee was to be a percentage of the recovery in the wrongful death action. The court, Paul S. Teranes, J., granted summary disposition for the defendants, ruling that the referral fee agreement violated conflict of interest provisions of the Michigan Rules of Professional Conduct and was therefore unenforceable. The court also denied the defendants' motion for sanctions pursuant to MCR 2.114 and MCL 600.2591(3)(a). The plaintiff appealed, and the defendants cross appealed.

The Court of Appeals *held*:

1. The defendants are not barred by MRPC 1.0(b) from raising the alleged violation of the Michigan Rules of Professional Conduct as a defense to the plaintiff's action. MRPC 1.0(b) provides that the professional conduct rules do not give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. The defendants in this case have not filed an action for enforcement of a rule or for damages arising out of a violation of a rule.

2. Judicial enforcement of the Michigan Rules of Professional Conduct is consistent with the long tradition in Michigan of judicial oversight of the ethical conduct of attorneys as officers of the court.

3. The trial court did not err in ruling that the plaintiff's receipt of a fee for referring the wrongful death plaintiff to the defendant attorneys would give rise to a conflict of interest under MRPC 1.7 in view of the plaintiff's representation of the wrongful death defendant. The conflict of interest is one that the plaintiff's client cannot waive because it is unreasonable, i.e., a conflict about

which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances. A lawyer with a conflict of interest that prevents the taking of a case may not refer a potential client to another lawyer and accept a referral fee. MRPC 1.8(a) prohibits the plaintiff from having a pecuniary interest in the wrongful death action against the plaintiff's client notwithstanding the client's consent; the conflict of interest is unreasonable and cannot be waived by the client.

4. The trial court did not clearly err in ruling that the plaintiff's action was not frivolous and that the defendants therefore were not entitled to sanctions against the plaintiff for the filing of a frivolous action. The enforceability of an unethical referral fee agreement was a question that had not been addressed by any published appellate court opinion in this state.

Affirmed.

ATTORNEY AND CLIENT — CONFLICTS OF INTEREST — REFERRALS.

A lawyer with a conflict of interest that prevents the taking of a case may not refer the potential client to another lawyer and accept a referral fee; a referral fee agreement between lawyers pertaining to such a referral is in violation of public policy and will not be enforced by a court (MRPC 1.7).

*Honigman Miller Schwartz and Cohn LLP* (by *Peter M. Alter* and *John S. Kane*) and *Allan Falk, P.C.* (by *Allan Falk*), for the plaintiff.

*Marc M. Susselman,* for the defendants.

Before: COOPER, P.J., and GRIFFIN and SAAD, JJ.

GRIFFIN, J. This case involves an attorney conflict of interest. Plaintiff requests this Court to enforce an unethical referral fee contract.[1] Like the circuit court, we refuse to do so and, accordingly, affirm the sum-

---

[1] Defendants dispute the existence of a contract. However, in addressing defendants' motion for summary disposition, we do not resolve factual disputes but rather consider the affidavits, depositions, and other substantively admissible evidence in a light most favorable to the nonmoving party. MCR 2.116(C)(10). *Maiden v Rozwood,* 461 Mich 109, 119-121; 597 NW2d 817 (1999); *Bullock v Auto Club of Michigan,* 432 Mich 472, 474, 475; 444 NW2d 114 (1989).

mary disposition granted in favor of defendants. We hold that the alleged contract is unethical because it violates the Michigan Rules of Professional Conduct (MRPC). Furthermore, we hold that unethical contracts violate our public policy and therefore are unenforceable.

I

The genesis of the present action is a December 9, 1994, automobile accident. On that date, Robert P. Stephenson was the operator of an automobile[2] in which his son, Robert Brett Stephenson (Brett), and his mother-in-law, Florence Budge, were passengers. All three occupants were killed when the automobile suddenly crossed the centerline of the highway and collided with another vehicle.

Estates were opened for Robert P. Stephenson and Brett Stephenson in the Oakland County Probate Court, while an estate was opened in Ontario for Canadian citizen Florence Budge. Catherine Stephenson Topolsky (Robert's wife, Brett's mother, and Florence's daughter) was initially appointed personal representative of the estates of both Robert P. Stephenson and Brett Stephenson. She retained plaintiff Evans & Luptak, PLC, as the attorney at law for both estates.

Although plaintiff represented the estate of Robert P. Stephenson, on August 19, 1996, Evans & Luptak attorney Marilyn H. Mitchell wrote a demand letter to General Accident Insurance asserting wrongful death claims against her own client. Plaintiff admits in its

---

[2] Robert P. Stephenson's employer, Martiz, Inc., was the owner of the vehicle.

appellate brief that it advocated the filing of wrongful death lawsuits against its client:

> Plaintiff determined and advised that the estates of the Brett Stephenson and Florence Budge had causes of actions for wrongful death against the Estate of Robert P. Stephenson, but plaintiff also determined that the estates would have to sue the Estate of Robert P. Shephenson as a nominal defendant if the insurance company declined to negotiate a settlement. Plaintiff advised Mrs. Topolsky, as personal representative of Brett Stephenson's Estate and as a beneficiary of the Budge Estate, that such causes of action existed as a potential asset of her son's estate (as well as her mother's estate).

In the lower court, Evans & Luptak "senior member" Michael J. Mehr filed an affidavit in which he swore:

> I consulted with my client, Mrs. Catherine Stephenson (now Topolsky) as Personal Representative of the Estate of Robert P. Stephenson (Mrs. Stephenson's deceased husband) and as Personal Representative of the Estate of Robert Brett Stephenson (her deceased son) in or about November 1996 with respect to my previous recommendation that the Estate of Robert Brett Stephenson and the Estate of Florence Budge (Mrs. Stephenson's mother) should pursue wrongful death lawsuits against the Estate of Robert P. Stephenson and Mr. Stephenson's employer, Maritz, Inc., to obtain insurance proceeds under Maritz's policy with General Accident Insurance.

Before the filing of the lawsuit *Estate of Robert Brett Stephenson v Estate of Robert P. Stephenson,* Oakland Circuit Court, Docket No. 96-534994-NI, Mrs. Topolsky withdrew as personal representative of the Robert P. Stephenson estate and her friend Maurice J. Beznos was substituted as its personal representative. Also, plaintiff referred the wrongful death claims against its own client (estate of Robert P. Stephen-

son) to defendants pursuant to an alleged referral contract in which defendants agreed to pay plaintiff a one-third contingent fee of all recoveries obtained against plaintiff's client.

Following service of the complaint, attorney Marilyn H. Mitchell of plaintiff Evans & Luptak, (who six months earlier wrote a demand letter against her client) filed an answer on behalf of the Robert P. Stephenson estate. Thereafter, an attorney retained by General Accident Insurance to represent the Robert P. Stephenson estate and vehicle owner, Martiz, Inc., promptly demanded that attorney Mitchell withdraw from the litigation, citing her conflict of interest:

> As you know, I was a bit chagrinned when you advised me that your law firm had filed an answer on behalf of defendant, Maurice J. Beznos, Personal Representative of the Estate of Robert P. Stephenson. As I advised you, my review of the file provided to me by General Accident Insurance Company, who has retained me to represent both defendants, disclosed that your law firm, and more particularly yourself, were making claim against the estate of decedent defendant Robert P. Stephenson, this being the very entity you supposedly filed an answer for. *As I advised you, yes, I believe it is a conflict of interest to represent one party against another and then turn around and represent the interests of the party against whom you had already made a claim.* [Emphasis added.]

In response to the letter, Evans and Luptak withdrew as attorneys for the estate of Robert P. Stephenson in the wrongful death action.

The wrongful death lawsuits proceeded and were eventually settled with the automobile insurance com-

pany paying all settlement proceeds.[3] In the present lawsuit, plaintiff seeks to enforce its alleged referral agreement with defendants and claims one-third of the attorney fees realized in the wrongful death suits against its own client.

The lower court granted summary disposition in favor of defendants. The court ruled that the alleged referral agreement violated the MRPC and therefore was unenforceable. The lower court also rejected plaintiff's argument that the insurance company was the real party in interest and the personal representatives of the estates could waive plaintiff's conflict of interest. Finally, the lower court denied defendants' motion for sanctions that asserted the complaint was without a reasonable basis in law or in fact (MCR 2.114[D]) and was devoid of legal merit (MCL 600.2591[3][a]). Plaintiff appeals as of right the order granting summary disposition in favor of defendants; defendants cross appeal the order denying an award of sanctions. We affirm.

II

As its first issue on appeal, plaintiff argues that the MRPC may not be used as a defense to plaintiff's breach of contract action because the rules expressly provide that they do not give rise to a cause of action for enforcement of a rule or for damages caused by a failure to comply with an ethical obligation. Specifically, plaintiff relies on MRPC 1.0(b):

---

[3] Plaintiff alleges that representations were made by the wrongful death plaintiffs that they would limit their recoveries against the estate of Robert P. Stephenson to available insurance proceeds. However, the complaints filed in the wrongful death actions were not so limited.

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules do not however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. In a civil or criminal action, the admissibility of the Rules of Professional Conduct is governed by the Michigan Rules of Evidence and other provisions of law.

Defendants argue that MRPC 1.0(b) is inapplicable because *defendants* have not filed a cause of action for enforcement of a disciplinary rule or for damages arising out of a violation of a disciplinary rule. Rather, defendants have simply defended a cause of action brought by plaintiff, raising as a *defense* that the alleged contract is unethical because it violates our public policy as expressed in the Michigan Rules of Professional Conduct. We agree with defendants.

Plaintiff's reliance on the lead opinion in *People v Green,* 405 Mich 273; 274 NW2d 448 (1979), is misguided. *Green* was a criminal case in which the issue was whether the extraordinary remedy of the exclusionary rule would be invoked to suppress evidence obtained in violation of our former Code of Professional Responsibility. The lead opinion by Chief Justice COLEMAN was joined by only one other justice and therefore is not precedentially binding. *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973); also see *Dean v Chrysler Corp,* 434 Mich 655, 660-661, n 7; 455 NW2d 699 (1990). Further, because the issue involved the scope of the criminal exclusionary rule, *Green* is readily distinguishable from the present issue whether the court should enforce an unethical contract in a civil action.

Plaintiff also argues that "the Michigan Rules of Professional Conduct are not rules of substantive

law" and therefore are inapplicable in court proceedings. Plaintiff's argument appears to be that judges have no ethical oversight regarding their court officers and that the Attorney Grievance Commission is the exclusive authority regulating the ethical obligations of attorneys.

In this regard, plaintiff fails to understand the proper role of the court regarding the ethical conduct of its officers. Starting with *In re Mills*, 1 Mich 392 (1850), Michigan has a long tradition of judicial oversight of the ethical conduct of its court officers. See Pasman, *The conflict of "conflict of interest": The Michigan example*, 1995 Det Col L R 133. Our ethics rules were originally based on statute and common law. However, in 1971, the Michigan Supreme Court adopted a version of the American Bar Association Code of Professional Conduct. Thereafter in 1988, the Code of Professional Conduct was superseded by the Supreme Court's adoption of a version of the ABA's Model Rules of Professional Conduct.

The more recent cases in which our courts have taken affirmative action to enforce our ethical standards and rules regarding counsel are *In re Schlossberg*, 388 Mich 389; 200 NW2d 219 (1972), *Attorney General v Public Service Comm*, 243 Mich App 487; 625 NW2d 16 (2000), *In re Norris Estate*, 151 Mich App 502; 391 NW2d 391 (1986), *GAC Commercial Corp v Mahoney Typographers, Inc*, 66 Mich App 186; 238 NW2d 575 (1975), and *Auseon v Reading Brass Co*, 22 Mich App 505; 177 NW2d 662 (1970). Such a practice is consistent with the Michigan Code of Judicial Conduct Canon 3(B)(3), which provides in part: "A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofes-

sional conduct of which the judge may become aware."

Recently, in *Abrams v Susan Feldstein, PC*, 456 Mich 867 (1997), our Supreme Court reversed a two-to-one opinion of the Court of Appeals, holding "[t]he Supreme Court agrees with the Court of Appeals dissent's discussion of principles pertaining to former DR 2-107" (former Code of Professional Conduct). That portion of the dissenting opinion states in pertinent part as follows:

> The lower court enforced an unethical fee splitting contract between two attorneys that directly violates the letter of DR 2-107 of Michigan's Code of Professional Responsibility. I would reverse and hold that contracts that violate Michigan's Code of Professional Responsibility contravene public policy and are, therefore, unenforceable.
>
> . . . [B]ecause conduct that violates attorney discipline rules offends Michigan public policy, see *In re Karabatian's Estate*, 17 Mich App 541, 546-547; 170 NW2d 166 (1969), and Michigan courts have traditionally refused to enforce contracts that contravene public policy, see *Weller v Weller*, 344 Mich 614; 75 NW2d 34 (1956); *Cook v Wolverine Stockyards Co*, 344 Mich 207; 73 NW2d 902 (1955); *Cudnick v William Beaumont Hosp*, 207 Mich App 378, 383-384; 525 NW2d 891 (1994), I would join the weight of authority and hold that courts should not enforce unethical fee agreements. See *Scolinos v Kolts*, 37 Cal App 4th 635, 639-640; 44 Cal Rptr 2d 31 (1995); *O'Hara v Ahlgren, Blumenfeld and Kempster*, 158 Ill App 3d 562, 564-566; 511 NE2d 879 (1987); *Gorman v Grodensky*, 130 Misc 2d 837, 840-841; 498 NYS2d 249 (1985); *Fleming v Campbell*, 537 SW2d 118 (Ct App Tex, 1976); see also *Leoris v Dicks*, 150 Ill App 3d 350, 353-354; 501 NE2d 901 (1986).
>
> I am not persuaded by plaintiff's reliance on a provision in the subsequently adopted Michigan Rules of Professional Conduct which states that disciplinary rules are to be used only for disciplinary purposes and not to support or shield against civil liability. See MCPC 1.0(b) and comment. The

question of civil liability for an ethics violation is distinguishable from the present issue whether the courts of this state should enforce, and thereby sanction unethical contracts. In my view, this Court should refuse to aid either party to an unjust contract where, as here, enforcing the agreement would further a purpose that violates public policy. See *O'Hara, supra* at 565; *Gorman, supra* at 840; see also *Leoris, supra* at 354. As stated by the California Court of Appeals in *Scolinos, supra* at 640: "It would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement." [*Abrams v Feldstein,* unpublished opinion per curiam of the Court of Appeals (GRIFFIN, P.J., dissenting) issued September 24, 1996 (Docket No. 170288).]

Although the Supreme Court in *Abrams* also remanded for further proceedings to determine whether the plaintiff could establish compliance with the disciplinary rule, it is clear the Supreme Court agreed with the fundamental principle that contracts that violate our ethical rules violate our public policy and therefore are unenforceable. Because the Supreme Court's order can be so understood, it is binding precedent. *Brooks v Engine Power Components, Inc,* 241 Mich App 56, 62-63; 613 NW2d 733 (2000); *People v Phillips (After Second Remand),* 227 Mich App 28, 38, n 11; 575 NW2d 784 (1997). Further, although *Abrams* construed our former Code of Professional Conduct rather than our current Rules of Professional Conduct, the logic remains that "[i]t would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement." *Abrams, supra.* As stated by the Nebraska

Court of Appeals in *In re Estate of Watson*, 5 Neb App 184, 191; 557 NW2d 38 (1996):

> We do not accept the contention that an attorney can receive fees for representation which from the outset gives the appearance of impropriety and is violative of established rules of professional conduct. An attorney may not recover for services rendered if those service are rendered in contradiction to the requirements of professional responsibility and inconsistent with the character of the profession.

See also *Moses v McGarvey*, 614 P2d 1363, 1372 (Alas, 1980) ("It is well established that an attorney, disqualified on conflict-of-interest grounds, generally is barred as a matter of public policy from receiving any fee from either of the opposed interests."), and *Bloomenthal v Halstrom*, 1999 WL 1318980 (Mass Super, 1999).

III

Next, plaintiff argues that even if the Michigan Rules of Professional Conduct are judicially enforceable, the lower court committed error requiring reversal in ruling that a conflict of interest exists under the facts of the present case. Again, we disagree.

It is a well-established ethical principle that "an attorney owes undivided allegiance to a client and usually may not represent parties on both sides of a dispute." *Barkley v Detroit*, 204 Mich App 194, 203; 514 NW2d 242 (1994). Further, "under no circumstances could a lawyer properly represent both the plaintiff and the defendant in contested litigation." *Friedman v Dozorc*, 412 Mich 1, 24, n 10; 312 NW2d

585 (1981). As the Court recognized in *Barkley, supra* at 202-203:

> [T]he conflict of interest rules are " 'a frank recognition that, human nature being what it is, a dual relationship involving adverse or conflicting interests, constitutes enormous temptation to take advantage of one or both parties to such relationship' " and that " '*[t]he purpose of [the conflict of interest rules] is to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom.*' " [State Bar of Michigan Ethics Committee] Formal Opinion 160 (November 1954), quoting [State Bar of Michigan Ethics Committee] Formal Opinion 132 (January 1950). [Emphasis in original.]

Plaintiff argues that there was no conflict of interest in the wrongful death actions because the estate of Robert P. Stephenson was a mere "nominal" defendant. We conclude that this argument is without merit. In the wrongful death actions, it was asserted that Robert P. Stephenson was the tortfeasor whose negligence was a proximate cause of the plaintiffs' wrongful death damages. The complaints requested a judgment against the estate of Robert P. Stephenson. While the automobile insurance carrier for Robert P. Stephenson may have a duty (subject to certain terms and conditions) to defend and *indemnify* the Robert P. Stephenson estate up to the monetary limit of the insurance policy, the estate of Robert P. Stephenson was the party defendant, not the insurance carrier. See MCL 500.3030; MRE 411. Further, the automobile insurance policy contained a cooperation clause that excludes coverage on the basis of noncooperation or collusion.

Finally, although plaintiff contends that its client waived any conflict, unreasonable conflicts of interest are not waivable. Specifically, MRPC 1.7(a)(1) provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client
> . . . .

Here, plaintiff's alleged belief that no conflict of interest existed was not reasonable. In this regard, the Comment to MRPC 1.7 states in pertinent part:

> *Loyalty to a Client.* Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined.
>
> \*     \*     \*
>
> *Consultation and Consent.* A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a)(1) with respect to representation directly adverse to a client, and paragraph (b)(1) with respect to material limitations on representation of a client, *when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.*
>
> \*     \*     \*
>
> *Conflicts in Litigation. Paragraph (a) prohibits representation of opposing parties in litigation.* Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (b). [Emphasis added.]

As the Indiana Court of Appeals explained in *Robertson v Wittenmyer*, 736 NE2d 804, 807 (Ind App, 2000):

> Further, Prof Cond R 1.7 also requires that the attorney have a reasonable belief that the representation will not affect the lawyer-client relationship. Here, we conclude that such a standard cannot be met. Thus, even a properly procured consent would not have complied with the rule. One commentator has explained:
>
> "A lawyer should not be allowed to sue an individual client on behalf of another present client, even if the lawyer represents the first client in a wholly unrelated matter, such as drafting his will. This follows, because the focus of Rule 1.7(a) is on impairment of the client-lawyer *relationship*, and it is unreasonable to postulate trusting relationships under those conditions."
>
> . . . Since a lawyer involved in such a case normally will not reasonably be able to entertain a belief that none of the client-lawyer relationships will be adversely affected. *The lawyer should not even ask for consent.* Rule 1.7(a)(1) alone would bar the representation even if consents were obtained from each of the clients.
>
> Geoffrey C. Hazard, Jr. & W. William Hodes, The law of Lawyering, § 1.7:203, at 233, § 1.7:207 240-41 (1998). [Emphasis in original.]

Also see *In re Anonymous Member of the South Carolina Bar*, 315 SC 141, 143; 432 SE2d 467 (1993) ("Furthermore, Rule 1.7 clarifies the standard as an objective test."); *Kelley's Case*, 137 NH 314; 627 A2d 597 (1993); *In re Bentley*, 141 Ariz 593; 688 P2d 601 (1984).

The present issue was addressed by the State Bar of Michigan Ethics Opinion RI-116 (February 19, 1992):

Syllabus

*After discovering a conflict of interest, which prevents a lawyer from taking a case, the lawyer may not refer a potential client to another lawyer and accept a referral fee.*
References: MRPC 1.5(e), 1.7, 1.9.

Text

A lawyer has been consulted by a client regarding the client's legal problem. During the course of the consultation, it becomes apparent that the lawyer has a conflict of interest and may not represent the client in this matter. May the lawyer refer the client to another law firm and collect a referral fee?

MRPC 1.7 states:

*"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:*

*"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and*

*"(2) each client consents after consultation."*

*"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:*

*"(1) the lawyer reasonably believes the representation will not be adversely affected; and*

*"(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."*

If the referring lawyer has a conflict, then any advice might smack of a conflict, even if the advice is to go to a specific lawyer. If the conflict arises because the lawyer has a current client with interests directly adverse to those of the prospective client, MRPC 1.7(a), any advice regarding choice of counsel would be inappropriate, and akin to

selecting one's adversary. If the conflict arises because the lawyer's duties to the lawyer's own interests or to a third party would materially limit the representation of the prospective client, MRPC 1.7(b), it is conceivable that the referring lawyer might be tempted to ill-advise the client as to a choice of counsel. Under MRPC 1.9, the propriety of the mere recommendation to the client would depend upon how apparent or how remote the conflict is to the subject matter. See MRPC 1.5(e).

When one couples the above facts with the existence of a proposed referral fee, then the referring lawyer has residual pecuniary interest in the outcome. See MRPC 1.5(e). The lawyer is "walking on both sides of the street," exacerbating the conflict. If what the lawyer loses from one side the lawyer has the ability to gain from the other side, clearly a conflict is present.

When lawyers split fees, both remain in a fiduciary relationship with the client. A fiduciary relationship and a conflict of interest are inconsistent with each other. [Emphasis in original.]

Although State Bar Ethics Opinions are not binding on this Court, they are instructive. *Barkley, supra* at 202. Here, we find Opinion RI-116 to be persuasive.

Furthermore, the alleged business transaction in which plaintiff seeks a financial interest in the wrongful death lawsuits against its own client is barred by MRPC 1.8(a). This ethical rule regarding prohibited business transactions provides in pertinent part:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

Again, the conflict of interest is waivable only if "the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client." After applying an objectively reasonable standard, we hold that the alleged contract in which plaintiff would financially benefit from suing its own client is not an interest that is objectively fair and reasonable to the estate of Robert P. Stephenson. See, generally, *Bloomenthal, supra*; *Robert A Shupack, P A v Marcus*, 606 So 2d 466 (Fla App, 1992). Accordingly, plaintiff's waiver argument is without merit.

IV

On cross appeal, defendants appeal the refusal of the trial court to award sanctions against plaintiff pursuant to MCR 2.114 and MCL 600.2591(3)(a). A trial court's decision that a claim is not frivolous is reviewed for clear error. *Szymanski v Brown*, 221 Mich App 423, 436; 562 NW2d 212 (1997). A decision is "clearly erroneous" if the reviewing court is left "with a definite and firm conviction that a mistake has been made." *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 91; 592 NW2d 112 (1999). While we may have ruled differently, we are unable to conclude that the trial court's ruling in this regard was clear error.

As stated by the trial court, this case presented a matter of first impression because no published opinion had ruled on the issue whether a fee agreement that violates the Michigan Rules of Professional Con-

duct is unenforceable. While the conduct of plaintiff was clearly unethical, the effect of such an ethical violation on an action to enforce a contract had been addressed only in the unpublished opinion *Abrams*, *supra*. For this reason, we hold that the trial court did not clearly err in failing to award sanctions.

Affirmed.

COOPER, P.J. I concur in the result only.