SERVITTO, J.
(dissenting). I respectfully dissent. The majority is correct that In re Powers Estate, 375 Mich 150; 134 NW2d 148 (1965), stands for the proposition that instruments drafted by an attorney that propose to give a gift or devise to the attorney or the attorney’s family members may be appropriate as long as the gift or devise does not result from undue influence.
However, Powers was decided long before the 1988 adoption of the Michigan Rules of Professional Con *568 duct (MRPC), or even the predecessor of those rules, the Code of Professional Conduct, which was adopted in 1971. See Evans & Luptak, PLC v Lizza, 251 Mich App 187, 194; 650 NW2d 364 (2002). MRPC 1.8(c) now specifically prohibits this conduct. Moreover, this Court has held, in the context of a referral fee contract sought to be upheld by the attorney, a contract is unethical when it violates the MRPC, and “unethical contracts violate our public policy and therefore are unenforceable.” Lizza, 251 Mich App at 189.
The Lizza Court agreed with our Supreme Court’s conclusion that “[i]t would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement.” Id. at 196 (quotation marks and citation omitted; alteration in original). While the majority correctly notes that a will is not a contract, it would nonetheless be equally absurd to allow appellant to benefit from his actions in the instant case given that he is also subject to professional discipline for those actions. And, given the analysis in Lizza, including the Lizza Court’s reliance on Abrams v Susan Feldstein, PC, 456 Mich 867 (1997), as well as the Supreme Court’s adoption of rules governing attorney conduct, this Court could conclude that the specific holding in Powers relied on so heavily by appellant has been superseded by subsequent Supreme Court actions.
With respect to public policy issues, our Supreme Court has stated:
[T]he proper exercise of the judicial power is to determine from objective legal sources what public policy is, and not to simply assert what such policy ought to be on the basis of the subjective views of individual judges. ...
*569 In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. [Terrien v Zwit, 467 Mich 56, 66-67; 648 NW2d 602 (2002)].
The Terrien Court also stated, “We note that, besides constitutions, statutes, and the common law, administrative rules and regulations, and public rules of professional conduct may also constitute definitive indicators of public policy.” Id. at 67 n 11 (emphasis added). In fact, our Supreme Court is charged with promulgating the rules regarding the ethical conduct of attorneys in Michigan. MCL 600.904 provides;
The supreme court has the power to provide for the organization, government, and membership of the state bar of Michigan, and to adopt rules and regulations concerning the conduct and activities of the state bar of Michigan and its members, the schedule of membership dues therein, the discipline, suspension, and disbarment of its members for misconduct, and the investigation and examination of applicants for admission to the bar.
It also has “the authority and obligation to take affirmative action to enforce the ethical standards set forth by the Michigan Rules of Professional Conduct.. ..” Speicher v Columbia Twp Bd of Election Comm’rs, 299 Mich App 86, 91; 832 NW2d 392 (2012). Because “the Legislature delegated the determination of public policy regarding the activities of the State Bar of Michigan to the judiciary pursuant to MCL 600.904... , conduct that violates the attorney discipline rules set forth in the rules of professional conduct violates public policy.” Id. at 92.
I would also note that while the majority cites the presumption of undue influence with respect to trusts *570 and wills as a protection, the majority does not adequately address MCL 700.7410(1), governing trusts, which provides:
In addition to the methods of termination prescribed by [MCL 700.7411 to MCL 700.7414], a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become impossible to achieve or are found by a court to be unlawful or contrary to public policy. [Emphasis added.]
MCL 700.2705 similarly provides:
The meaning and legal effect of a governing instrument other than a trust are determined by the local law of the state selected in the governing instrument, unless the application of that law is contrary to the provisions relating to the elective share described in part 2 of this article, the provisions relating to exempt property and allowances described in part 4 of this article, or another public policy of this state otherwise applicable to the disposition.
Thus, once the trial court has found the terms of a trust or instrument of disposition to be contrary to public policy the legal effect of the instrument is a foregone conclusion and the meaning of the instrument is no longer open to interpretation or subject to dispute concerning intent. Given these statutory provisions, longstanding caselaw, and the language of MRPC 1.8(c), I disagree with the majority’s conclusion that Powers requires remand for further proceedings in which appellant would be required to overcome the presumption of undue influence. I would instead hold that the trial court did not err when it determined that the devises to appellant and his children in the June 8, 2011 will and the August 13, 2010 trust were void as against public policy and I would affirm.